UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
FORT PIERCE DIVISION



FILED BY _____ D.C.

FEB 28 2025

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - FT. PIERCE

Kimberly Marasco
    Plaintiff,

       VS

Taylor Swift, an individual,
Jack Antonoff, an individual,
Aaron Dessner, an individual,
Universal Music Group, Inc. A California
Corporation,         and
Republic Records, American record label
      Defendants,

COMPLAINT FOR COPYRIGHT INFRINGEMENT

(DEMAND FOR JURY TRIAL)

INTRODUCTION

1.  Plaintiff, Kimberly Marasco (Hereinafter 'Original1'), Pro Se, brings this Complaint against

    Defendants, Taylor Swift (Hereinafter 'Artist1') Jack Antonoff, Aaron Dessner, Republic

    Records ('RP'), and Universal Music Group ('UMG'), (together 'Defendants'), for damages

    and in support thereof states as follows:

THE PARTIES

2.  Plaintiff Original1 is a writer and author in Florida. She has been a writer since at least 2015.

    She is the author and owner of the rights to the creative works of her published books of

    poetry and verse: _Dealing with a Chronic Illness_ (2017) and _Fallen from Grace_ (2019).

    _Fallen From Grace_ was renamed _Songs of the Unsung_ in April of 2020 when it was

    published on Amazon.

Prepared with the help of an attorney

3. Defendant Artist1 (Taylor Swift) is a is an American singer-songwriter based in Nashville, TN and is and was doing business in the State of Florida and within this judicial district.

4. Defendant Jack Antonoff is a songwriter and a resident of New York and is and was doing business in the State of Florida and in this judicial district.

5. Defendant Aaron Dessner is a songwriter and a resident of New York and is and was doing business in the State of Florida and in this judicial district.

6. Defendant Universal Music Group, Inc., is a musical recording group with operational headquarters in California and is and was doing business in the State of Florida and in this judicial district and distributes the songs listed in this complaint.

7. Defendant Republic Records is an American record label for the Defendants. Based in New York, Republic Records is owned by Universal Music Group and released the infringing musical compositions for the songs listed in this complaint.

8. UMG, RP, Artist1, Jack Antonoff and Aaron Dessner (together, Defendants) songs contain a number of creative expressions that copied the text, images, and designs without authorization or credit to the detriment of the Plaintiff, Original1. The Defendants' songs and videos are from the albums *Lover* (2019), *Folklore* (2020), *Midnights*, (2022) and *The Tortured Poets Dept* (2024) with all credits for text, design and image elements claimed as works by the Defendants.

9.  The songwriters for each composition included in this complaint are as follows (Please note that either *one poem* was used to create *more than one song*, or *more than one poem* was used to create *one song* creating 13 Counts):

    a.  Original1's poem, "*Ordinary Citizen*", contain unique expressions found in the song, "*The Man*" (Artist1)

    b.  Original1's poem, "*Whirlwind*", contains unique expressions found in the songs "*Who's Afraid of Little Old Me*" and "*I Can Do it with a Broken Heart*" (Artist1 & Jack Antonoff)

    c.  Original1's poems, "*Scorpion, Beams of Light, Gaslight, and Innocence Lost*" contain unique expressions found in the song "*My Tears Ricochet*" (Artist1).

    d.  Original1's poem, "*Sky Tinted Water*" contain unique expressions found in the songs "*Hoax*" (Artist1 & Aaron Dessner) and "*Illicit Affairs*" (Artist1 & Jack Antonoff)

    e.  Original1's poem, "*Delusional Reality*" contain unique expressions found in the song "*Midnight Rain*" (Artist1 & Jack Antonoff)

    f.  Original1's poem, "*Black Cat*" contain unique expressions found in the song "*Death by a Thousand Cuts*" (Artist1 & Aaron Dessner)

    g.  Original1's poems, "*Ingenue*" and "*Innocence Lost*" contain unique expressions found in the song "*Robin*" (Artist1 & Aaron Dessner)

    h.  Orignal1's poem, "*The Fire* "contain unique expressions found in the song "*The Great War*" (Artist1 & Aaron Dessner)

    i.  Original1's poem, "*Breaking Waves*" contain unique expressions found in the music video for "*Cardigan*" (Artist1 & Aaron Dessner)

    j.  Original1's poems, "*Devious Minds*" and "*Noah*" contain unique expressions found in the songs "*Clara Bow*" (Artist1 & Aaron Dessner), "*Guilty as Sin?*" (Artist1 & Jack Antonoff), "*Down Bad*" (Artist1 & Jack Antonoff).

    k.  Original1's poem, "*Stagnate*", contain unique expressions found in the songs "*Right Where You Left Me*" and "*It's Time to Go*" (Artist1 & Aaron Dessner).

    l.  Orinignal1's poems, "*Time*" and "*Invisible Matter*" contain unique expressions found in the song "*Invisible String*" (Artist1 & Aaron Dessner)

Prepared with the help of an attorney

m. Original1's introduction to "<u>Fallen</u>" contain similar verbiage found in the introduction to "<u>The</u> <u>Tortured Poet's Department</u>".

n. Not included in Counts section: The song, "*Thank you Aimee*" contains a verse that mentions only few people know who the real "KIM" is (Artist1 & Aaron Dessner**).

**Refer to Exhibits** for this information.

JURISDICTION AND VENUE

10. This is an action arising under the Copyright Act, 17 U.S.C. § 501.

11. This Court has subject matter jurisdiction over these claims pursuant to 28 U.S.C. §§ 1331, 1338(a).

12. Venue is proper in this district under 28 U.S.C. § 1391(b) and (c) and 1400(a) because the events giving rise to the claims occurred in this district and the property that is the subject of this action is situated in the district.

13. This court has jurisdiction over Defendants under Florida Statutes Title VI. Civil Practice and Procedure § 48.193 (1)(a)(1) because Defendants have engaged in substantial business activities in Florida by performing concerts resulting in millions of dollars of revenue for themselves. Furthermore, jurisdiction is proper when a non-resident Defendant has purposefully availed itself of the privilege of conducting activities in the forum state or has purposefully directed its conduct into the forum state. The idea is that the Defendants received the benefits and protections of the forum state's laws, so it would be fair to require the Defendants to undertake the burdens of litigating in that state. Moreover, the Plaintiff's claim must arise out of the Defendants' conduct in the forum state or be related to it, and the exercise of jurisdiction must be reasonable under the circumstances.

14. Defendants are further subject to personal jurisdiction in this state as they promote and produce events in the district such as concerts and selling merchandise, receiving millions of local dollars in revenue and thus have maintained sufficient minimum contacts in the district such that the exercise of personal jurisdiction over Defendants would not offend traditional notions of fair play and substantial justice.

## THE COPYRIGHTED WORK AT ISSUE

15. Plaintiff brings this action for violations of Plaintiff's exclusive rights under the Copyright Act, 17 U.S.C. § 106, to copy, prepare derivative works, perform and distribute Plaintiff's original copyrighted Work.

16. Plaintiff is the author of a book with poems and verse titled *Dealing with a Chronic Illness: Vestibular Neuritis* ("Dealing") and registered the Work in the US Copyright Office as Copyright TXu2-061-218 (Ex. A) in 2017 and the book was published and offered for sale to the public in early 2018 by Outskirts Press.

17. Plaintiff is the author of another book registered as *Fallen* from Grace ("Fallen"), May 27, 2020, with works produced and sold on Amazon KDP (titled Songs of the Unsung). The book is registered in the US Copyright Office as TXu002200550 (Ex. A). Both the registered date and distribution date fall prior to the Defendants' songs.

18. Both "Dealing", 2017 and "Fallen", 2020 will be referred to as "Works" by the Plaintiff. Plaintiff is, and at all relevant times has been, the copyright owner of rights under United States copyright with respect to the Works.

19. Defendants had access to the Works due to the Works being published for wide dissemination via online websites as well as through publishing companies.

Prepared with the help of an attorney

20. The Plaintiff has sold more than 300 books according to Amazon KDP and Outskirts Press and Ukiyoto Publishers has not provided a total count of books sold via their outlets.

21. According to IssueWire: "*Fallen From Grace* has already received a lot of positive feedback from the time of its launch and has been showcased to more than twenty-five thousand bookstores and retail chains across the globe for taking up and placing a copy at their stores. As true stories and inspirational stories always find a way to people's heart providing them with the much-needed hope and motivation to fight their own battles, few stores have taken up the copies on consignment basis while rest are in invigilation mode to place them and start selling. The title has also been made available on Ingram for wholesale purchase by stores and retailers." (https://www.issuewire.com/kimberly-marasco-releases-fallen-from-grace-which-is-based-on-her-inspirational-life-story-1657510209176177).

22. Defendants infringed Plaintiff's exclusive rights under 17 U.S.C. §§ 106 and 602 by unlawfully and extensively copying Plaintiffs protected expressions and publishing derivatives of Dealing and Fallen without Plaintiff's authorization in violation of 17 U.S.C. § 501.

23. Defendants have never been licensed or given permission to use the Works, at issue in this action, for any purpose.

24. In 2024, Plaintiff discovered most of the infringing activity by a co-worker commenting on the substantial similarity of the Defendant's music to the Works as well as after viewing the "Eras Tour" over the internet and on television. The Plaintiff continued to find more infringement after filing the first complaint.

25. In 2024, Plaintiff brought suit against Taylor Swift Productions, Inc. in small claims court in Fort Pierce, Florida, seeking redress. The Defendant had the case removed to Federal Court in the southern District of Florida, Fort Pierce Division as Case No. 2-24-CV-14153. Taylor Swift,

an individual, was added to the complaint but later dismissed as the Plaintiff was not able to serve her via personal methods. The case against Taylor Swift Productions is ongoing. Plaintiff decided to bring this, separate, lawsuit against the other Defendants not included in the previous lawsuit. Plaintiff will once again reattempt service upon Taylor Swift but will not include Taylor Swift Productions in this lawsuit.

### Defendants' Infringement

26. Defendants have willfully infringed Plaintiff's rights by showing their individual and joint reckless disregard for or willful blindness as to Plaintiff's copyrights. The harm caused to Plaintiff is irreparable and ongoing as a direct and proximate cause of Defendants copyright infringement. Plaintiff never gave Defendants permission or authority to copy or prepare derivative works of the Works at issue in this case.

27. Defendants has appropriated either **"verbatim or through close paraphrasing"** at least twenty-five to thirty percent of Plaintiff's Works of the same subject matter within a close timeframe after Original1 published her Works.  The material copied by the Defendants was an essential part of Plaintiff's work. The Plaintiff has received recognition and awards for her strong writing skills and creativity, including receiving praise from a professor for writing a "strong" thesis for her graduate school program. The Defendants' use clearly affected the potential market for the work because, before the use, the Plaintiff received interest from other publishers, poetry contests and literary magazines (Exhibit B).

28. The Plaintiff is entitled to compensation from the Defendants' willful infringement, attorney's fees and such other amounts that may be proper under 17 U.S.C. § 504 and § 505.  In the alternative, at her election, Plaintiff is entitled to statutory damages by virtue of Defendants. Plaintiff is entitled to profits in amounts to be proven at trial under 17 U.S.C. § 504 (b).

Prepared with the help of an attorney

29. Unless enjoined and restrained by this Court, Defendants will continue to infringe Plaintiff's copyrights to include text from the following poems and verse by the Plaintiff; "*Ordinary Citizen*", "*Whirlwind*", "*Scorpion*", "*Beams of Light*", "*Sky Tinted Water*", "*Gaslight*", "*Delusional Reality*", "*Black Cat*", "*Innocence Lost*", "*Ingenue*", "*The Fire*", "*Breaking Waves*", "*Noah*", "*Stagnate*", "*Invisible Matter*", the introduction to Songs of the Unsung, and other media and visuals.

Count I

COPYRIGHT INFRINGEMENT of "ORDINARY CITIZEN"

(17 U.S.C. § 106 and § 501)

By Plaintiff against Defendants

30. Plaintiff incorporates the allegations of paragraphs 1 through 29 of this Complaint as if fully set forth herein. Plaintiff created Dealing as an original expression of creative writing. The poem "*Ordinary Citizen*" is part of Dealing (2018).

31. Plaintiff has the exclusive rights, pursuant to Section 106 of the Copyright Act, to make derivative works, distribute and publicly perform her copyrighted Works. Defendants infringed Plaintiff's exclusive rights under 17 U.S.C. §§ 106 and 602 by creating the song and video "*The Man*" containing original expressions derived from the poem "*Ordinary Citizen*" by copying the unique way Plaintiff expressed elements to form a protectable expression. Plaintiff's poem, "*Ordinary Citizen*" (Fallen from Grace, 2018) published by Outskirts Press, includes this text:

"I'm running behind/You say its His word against mine/No one will listen/Because I'm only an ordinary citizen/So you tell me I'm guilty before committing a crime/I try to fly

like a butterfly/But my wing was clipped by his lip…/Power only resides in my mind/as its His word against mine/After the sun sets/the earth is nothing but a dark shadow/Light remains in the Afterglow".  On an interesting note, the last word in this poem became the title of yet another song by Taylor Swift.

The Defendants used the same words (albeit changing a few words here and there) to come up with a strikingly similar, and powerful, expression in her song, *"The Man"* (*Lover, August 2019*):  The verse that was copied became the epitome and chorus for the song:

"[Chorus] I'm so sick of running as fast as I can/Wondering if I'd get there quicker if I was a man/And I'm so sick of them coming at me again/…Could all be separated from my good ideas and power moves/…And it's all good if you're bad".

Defendants used the same unique expressions to describe a patriarchal corporate system of corruption.  Plaintiff wrote about a female confronting adversity in a corporate environment. The song is not a general song about men being more powerful than women across all industries, but rather, specifically relates to an office setting where a boss oversees a female worker. This is exactly what the Plaintiff wrote in her poem, *"Ordinary Citizen"*.

Additional lyrics by the Defendants include "When everyone believes ya, what's that like?" She is referring to how the man can lie and get away with it which is exactly what the Plaintiff wrote in this verse:

"I'm running behind, you say it's his word against mine. No one will listen, because I'm only an ordinary citizen, so you tell me I'm guilty before committing a crime, I try to fly like the butterfly, but my wing was clipped by his lip… it doesn't matter…Power only resides in my mind. As the stateswoman told me, it's his word against mine".

In the previous complaint, the Defense compares this to Beyonce's song, *"If I Were a Boy"*. However, Beyonce is describing a boy in the world (not in an office setting) and how the boy

should be more *compassionate* toward females. This is a completely different context and does not contain any similarities and doesn't use any of the same unique expressions as the Plaintiff wrote.  The Defense also compares the poem to Chaka Khan's, "*A Woman in a Man's World*". Khan's lyrics include "In a dog-eat-dog, show biz town" referring to the entertainment industry and how she has a dream but that others drag her down because she is in a Man's world. There are no similar unique expressions found in this song, and the context is different.

Count II

COPYRIGHT INFRINGEMENT of "WHIRLWIND"

(17 U.S.C. § 106 and § 501)

By Plaintiff against Defendants

32. Plaintiff incorporates the allegations of paragraphs 1 through 29 of this Complaint as if fully set forth herein. Plaintiff created Dealing as an original expression of creative writings. The Poem "*Whirlwind*" is part of Dealing (2018).

33. Plaintiff has the exclusive rights, pursuant to Section 106 of the Copyright Act, to make derivative works, distribute and publicly perform her copyrighted Works. Defendants infringed Plaintiff's exclusive rights under 17 U.S.C. §§ 106 and 602 by creating the song titled "*Who's Afraid of Little Old Me*" containing original expressions derived from the poems "*Whirlwind*" by copying the unique way Plaintiff expressed elements to form a protectable expression. Plaintiff's poem (Fallen from Grace, 2018) published by Outskirts Press, includes this text:

> "They caged me and told me I'm crazy/No one would have believed Nellie Bly/Until she went undercover and revealed their lies/Now I'm standing in the midst of a whirlwind/Chaos all around me/Under investigation/Once again, I feel the coy tricks of

retaliation.../But I know it's you and you alone/Who will make what you are/I will continue to fight thru the storm".

Defendants' lyrics include the same unique expression *"Who's Afraid of Little Old Me?" (April 2024)* The Defendants wrote:

"The who's who of "Who's that?" is poised for the attack/But my bare hands paved their path/You caged me and told me I'm crazy/If you wanted me dead../".

The Defendants used strikingly similar text and context to describe a woman being gaslighted while also acknowledging she created her own circumstance. Furthermore, the Plaintiff referenced Nellie Bly, who is a journalist from the 1880's, who wrote about the mentally ill in an insane asylum. The Defendant used the same context for their video, *Fortnight*, which portrays a woman like Nellie Bly working in an office using a typewriter and depicting a person in an insane asylum. In Nellie Bly's book, she is wearing a dress while working which resembles the same dress Taylor Swift wore in the video.

The Plaintiff's verse "What I found is that when you write from your heart, it results in a work of art". This strikingly similar expression was used in the Defendants' song, *"I Can Do It With a Broken Heart"* where she sings "I cry a lot but am so productive, it's an art...I can even do it with a broken heart". The plaintiff's poem is about overcoming adversity and being able to use it in creative ways, such as in writing her book. The Defendants' used this same, unique, expression for their song.

Prepared with the help of an attorney

Count III

COPYRIGHT INFRINGEMENT of "SCORPION, BEAMS OF LIGHT,

GASLIGHT and INNOCENCE LOST"

(17 U.S.C. § 106 and § 501)

By Plaintiff against Defendants

34. Plaintiff incorporates the allegations of paragraphs 1 through 29 of this Complaint as if fully set

forth herein. Plaintiff created <u>Dealing</u> and <u>Fallen</u> as an original expression of creative writings.

The Poems "*Scorpion*", "*Beams of Light*" "*Gaslight*" and "*Innocence Lost*" are a part of <u>Dealing</u>

(2018).  The poem, *"Sky Tinted Water"* is a part of <u>Fallen</u> (2020).

35. Plaintiff has the exclusive rights, pursuant to Section 106 of the Copyright Act, to make

derivative works, distribute and publicly perform her copyrighted Works. Defendants infringed

Plaintiff's exclusive rights under 17 U.S.C. §§ 106 and 602 by creating the song titled *"My Tears*

*Ricochet"* containing original expressions derived from the poems "*Scorpion*", "*Beams of Light*",

"*Gaslight*" "*Innocence Lost*" "*Sky Tinted Water*" by copying the unique way Plaintiff expressed

elements to form protectable expressions.

  The Plaintiff's poem, *"Scorpion, and Beams of Light"* creatively depicts a person

communicating with someone who is deceased.

  In *"Scorpion"*, the Plaintiff wrote:

    "No apologies can remove the tears/When you're no longer here" and "Until I heard your

    laughter from above (from heaven)…and your words echoing: this is nothing but a shit

    show".

The Plaintiff's poem, *"Beams of Light",* she wrote about those who lost their lives during the 9-11 tragedy referring to the innocent lives ascending into heaven with this text:

> "Where the souls of the innocence ascended/When the diabolical presence/Thought they would be the ones to enter Heaven's gate.../Only the innocent souls were accepted/The dark evil entity Devoured in the Fire/Doves dancing and singing high in the sky, and I can hear the beautiful choir/."

The Defendant's song, *"My Tears Ricochet" (Folklore, 2020)*, includes this verse

> "And I still talk to you (when I'm screaming at the sky)"

The Defendants rephrased what the Plaintiff wrote in saying "my tears ricochet (reflect) unto the person crying. The Plaintiff wrote about catching a single tear drop insinuating that her lover is trying to conceal his sadness but the pain the lover caused is also being reflected unto himself. He is not only causing her pain, but pain for himself.  This is a very powerful part of the Plaintiff's poem in which the Defendant clearly copied.

The Plaintiff's (Original1) poem, *"Innocence Lost"* includes this text:

> "I caught your tear in my hand, and I fear, you're drowning in your own reflection/You're drowning in your own reflection"

The Defendants uses tears that get reflected or rather, ricochet. (The word ricochet is a synonym for being reflected off something).

The Defendants' verse "She's laughing up at us from Hell" is also strikingly similar to the Plaintiff's passage "...I heard her laughter from above (heaven)" using the same original expression.

The Plaintiff's poem, *"Gaslight"*, includes the text:

> "You're taunting me/ claiming its all for fun/A coward hides behind a gaslight/Stealing positive energy/Nowhere to run or hide/Unable to escape this tormentor.../When its obvious they are deliberately making me look crazy.../When the seven seas rise in anger/All the resources will be submerged under water/There will be nothing left in sight/This was the result of your Gaslight/"

The Defendants' song, *"My Tears Ricochet"*, include the text:

> "I didn't have it in myself to go with grace/And so the battleships will sink beneath the waves/You had to kill me, but it killed you just the same".

The Defendants used the same unique expressions to being "submerged" under water and both losing everything. The Plaintiff wrote about a battle between two people (on water which represents life for everything that exists) where nothing will be left and that both will end up destroying each other. Also, the Plaintiff was a flight attendant during the tragic 9-11 event which inspired the poem, *"Beams of Light"* written by the Plaintiff. One of the chapters in the Plaintiff's book, "Fallen from Grace", compares the loss of jewelry to being an omen to future loss the Plaintiff endured. The Defendants used the same theme in their song, *"Tears Ricochet"*, in stating how she buried someone with jewelry she bought them.

The Plaintiff's poem, "Gaslight", contains this unique expression "Create a masterpiece with your engineering mind". Later, the Plaintiff wrote a poem on X.com titled *"Elon=MC$^2$"* in reference to Elon being a genius in which the Plaintiff again used this same, unique, expression. In the Defendants' song, "Mastermind" a verse is: "To assess the equation of you" relating to someone as a mathematical equation which is eerily similar to the expression by the Plaintiff referring to Elon Musk a mathematical equation.

Prepared with the help of an attorney

The Defendants verse "The touch of a hand lit the fuse" is strikingly similar to the Plaintiff's expression "every gaslight has a gas leak, you set off the fuse, now devour in your own gaslight". The expression here is that the person caused the fuse since they, (with their own hands) set it off and ignited it, causing a leak which further exacerbated it.

Count IV

COPYRIGHT INFRINGEMENT of "SKY TINTED WATER"

(17 U.S.C. § 106 and § 501)

By Plaintiff against Defendants

36. Plaintiff incorporates the allegations of paragraphs 1 through 29 of this Complaint as if fully set forth herein. Plaintiff created *Fallen* as an original expression of creative writings. The Poem "*Sky Tinted Water*" is a part of *Fallen* (2020).

37. Plaintiff has the exclusive rights, pursuant to Section 106 of the Copyright Act, to make derivative works, distribute and publicly perform her copyrighted Works. Defendants infringed Plaintiff's exclusive rights under 17 U.S.C. §§ 106 and 602 by creating the song titled "*Hoax*" and "*Illicit Affairs*" containing original expressions derived from the poems by copying the unique way Plaintiff expressed elements to form protectable expressions

 The Plaintiff's poem, "*Sky Tinted Water*" includes this text:

  "Sky tinted water/Your love is crystal clear…/Thought love would leave the way/Then I saw your reflection/And falsely led astray/I'm trying not to cry/Will you show me, how to compliment the sky?"

The Defendant's song, "*Hoax*" includes this verse:

> "Your faithless love is the only hoax I believe in".

This is a rephrase of a person being falsely led to believe in love as written in "*Sky Tinted Water*" where the Plaintiff states she was falsely led astray believing in false love.

The Defendant's song, "*Illicit Affairs*" (July 24, 2020), contains the text:

> "You showed me colors you knew I couldn't see with anyone else" as well as "I made you my temple, my mural, my sky"

These lyrics are strikingly similar to the Plaintiff's poem, "*Sky Tinted Water*", with the verse

> "Will you show me how to complement the sky?".

Here, the Plaintiff has made someone to be beautiful, as if they were the same as a beautiful sky with implications that the sky is a big part of the Plaintiff's life. Again, this goes back to when the Plaintiff worked as a flight attendant and used to take pictures of the beautiful skies (Exhibit B). The Defendant used the same words, albeit changing a few, using the same unique and original expression.

Count V

COPYRIGHT INFRINGEMENT of "DELUSIONAL REALITY"

(17 U.S.C. § 106 and § 501)

By Plaintiff against Defendants

38. Plaintiff incorporates the allegations of paragraphs 1 through 29 of this Complaint as if fully set forth herein. Plaintiff created <u>Dealing</u> as an original expression of creative writings. The Poem, "*Delusional Reality*", is a part of <u>Dealing</u> (2018).

39. Plaintiff has the exclusive rights, pursuant to Section 106 of the Copyright Act, to make derivative works, distribute and publicly perform her copyrighted Works. Defendants infringed

Plaintiff's exclusive rights under 17 U.S.C. §§ 106 and 602 by creating the song titled *"Midnight Rain"* containing original expressions derived from the poem *"Delusional Reality"* by copying the unique way Plaintiff expressed elements to form protectable expressions.

Plaintiff's poem, *"Delusional Reality" (Dealing, 2018)*, includes this verse:

> "Drowning in my storm, waves crash the shore" and "with the clouds I rain, the smog consumes me"

This is a unique reference to actually being the rain/storm which is an original expression.

The Defendant produced a song titled *"Midnight Rain"* and *"Long Story Short"* in 2020 and 2022 with this verse:

> "I was midnight rain" and *"my waves* meet your shore"

The unique expression is how the Plaintiff refers to physically being the rain/waves/ocean, rather being in the rain or storm.  In the previous complaint, the Defendant compares Braid Paisley's, "Perfect Storm" to "Midnight Rain". While there is a bit more similarity with his song, they still differ in context as well as in figure of speech. Paisley describes how his lover has both bad and good qualities and thus relates her with a storm and sunshine. This is not the same expression conveyed by the Plaintiff where she refers to being consumed by *her own* storm. In "Midnight Rain", the Defendant describes *herself* as being rain and how she is *consumed* by it. "My waves crash your shore" is a unique phrase which was copied verbatim by the Defendant. Furthermore, the more similarities found, the stronger the infringement.

Count VI

COPYRIGHT INFRINGEMENT of "BLACK CAT"

(17 U.S.C. § 106 and § 501)

By Plaintiff against Defendants

40. Plaintiff incorporates the allegations of paragraphs 1 through 29 of this Complaint as if fully set

forth herein. Plaintiff created <u>Dealing</u> as an original expression of creative writings. The Poem

"*Black Cat*" is a part of <u>Dealing</u> (2018).

41. Plaintiff has the exclusive rights, pursuant to Section 106 of the Copyright Act, to make

derivative works, distribute and publicly perform her copyrighted Works. Defendants infringed

Plaintiff's exclusive rights under 17 U.S.C. §§ 106 and 602 by creating the song titled *"Death by*

*a Thousand Cuts"* containing original expressions derived from the poem "*Black Cat*" by

copying the unique way Plaintiff expressed elements to form protectable expressions.

The plaintiff used this text in "*Black Cat*":

> "A certain cat has wrinkles around her envious eyes/The sun is blinding and ailing to her
>
> senescence/She tries to remain clandestine/But doesn't realize her four-inch claws don't
>
> culminate in pain/The devious black cat can only leave tiny scratch marks on my back".

The Defendant's song, "*Death by a Thousand Cuts"* Aug 14, 2019) includes this verse:

> "Cause I can't pretend it's okay when it's not" and "Trying to find a part of me that you
>
> didn't touch".

The Plaintiff's poem describes being "cut" when in actuality, it's not physical pain but rather

emotional pain that is conveyed in this unique expression. Furthermore, she tries to remain secret

as if the pain someone else is causing doesn't hurt and that it won't cause pain, even though it

does but she remains "clandestine" to avoid revealing it.

Prepared with the help of an attorney

Count VII

COPYRIGHT INFRINGEMENT of "INGENUE" and "INNOCENCE LOST"

(17 U.S.C. § 106 and § 501)

By Plaintiff against Defendants

42. Plaintiff incorporates the allegations of paragraphs 1 through 29 of this Complaint as if fully set

forth herein. Plaintiff created Dealing as an original expression of creative writings. The Poem

"Ingenue", is a part of Dealing (2018).

43. Plaintiff has the exclusive rights, pursuant to Section 106 of the Copyright Act, to make

derivative works, distribute and publicly perform her copyrighted Works. Defendants infringed

Plaintiff's exclusive rights under 17 U.S.C. §§ 106 and 602 by creating the song titled *"Robin"*

containing original expressions derived from the poem *"Ingenue"* by copying the unique way

Plaintiff expressed elements to form protectable expressions.

   The Defendant's song, *"Robin"*, is about a young girl filled with imagination and innocence

while an adult acknowledges the need to protect and guide her.

   A verse in the Defendants' song is:

      "The time will arrive for the cruel and the mean. You'll learn to bounce back just like

      your trampoline" and "You're an animal, /you are bloodthirsty/Way to go, tiger".

   A verse in the Plaintiff's poem, *"Innocence Lost"*, is

      "I wonder what she thinks of the world, if she only knew, it would turn mean and cruel".

   In her poem, *Ingenue*, the Plaintiff wrote

      "Just an ingenue, viewing the world as it is new/A girl once hungry, lost to starvation/of a

      cub who grew into a lion".

Both poems, including the Defendants' version, are about a child growing up in a world that will eventually turn mean and cruel and so the child needs guidance and protection, but that one day, she will turn into a lion and no longer need such care. Also, the Defendants' song, "*Nothing New*", contains the verse, "everyone loves an ingenue" which is just another similarity amongst the two compositions.

Count VIII

COPYRIGHT INFRINGEMENT of "THE FIRE"

(17 U.S.C. § 106 and § 501)

By Plaintiff against Defendants

44. Plaintiff incorporates the allegations of paragraphs 1 through 29 of this Complaint as if fully set forth herein. Plaintiff created Fallen as an original expression of creative writings. The Poem "*The Fire*", is a part of Fallen (2018).

45. Plaintiff has the exclusive rights, pursuant to Section 106 of the Copyright Act, to make derivative works, distribute and publicly perform her copyrighted Works. Defendants infringed Plaintiff's exclusive rights under 17 U.S.C. §§ 106 and 602 by creating the song "*The Great War*" containing original expressions derived from the poem "*The Fire*" by copying the unique way Plaintiff expressed elements to form protectable expressions.

The Plaintiff's poem, "*The Fire*" includes this verse:

"Anger fuels our Desire/I'm fighting fire with fire/...Pick your battles wisely, they say".

The Defendant's song, *The Great War* (Oct 21, 2022) includes this text:

"Diesel is Desire, you were playing with fire" and "Now I breathe fire each time we talk".

The Plaintiff used a unique expression in writing *fuel* to ignite *desire* to *fight* each other in which the Defendants used the same words to convey the same unique expression.

Prepared with the help of an attorney

Count IX

COPYRIGHT INFRINGEMENT of "BREAKING WAVES"

(17 U.S.C. § 106 and § 501)

By Plaintiff against Defendants

46. Plaintiff incorporates the allegations of paragraphs 1 through 29 of this Complaint as if fully set

forth herein. Plaintiff created Fallen as an original expression of creative writings. The Poem

"*Breaking Waves*" is a part of Fallen (2018).

47. Plaintiff has the exclusive rights, pursuant to Section 106 of the Copyright Act, to make

derivative works, distribute and publicly perform her copyrighted Works. Defendants infringed

Plaintiff's exclusive rights under 17 U.S.C. §§ 106 and 602 by creating the

**video** *"Cardigan"* containing original expressions derived from the poem "*Breaking Waves*" by

copying the unique way Plaintiff expressed elements to form protectable expressions.

The Plaintiff's poem, "*Breaking Waves*" includes this verse:

"I realize I'm swimming in a fierce ocean, waves crashing over me/I dive into the high

tide/between the breaking waves/swimming until I reach the calm/The calm is my saving

grace".

The Defendant's video, *Cardigan* (July 24, 2020) depicts a person swimming in an ocean

looking for something to calm her. The expression is about being stranded in a vast ocean while

searching for something to calm (ease the tension) of being stranded all alone.  The Plaintiff

wrote about being stranded in an ocean looking for something to calm her. While this doesn't

include text, it's the visual image that mimics exactly what the Plaintiff wrote about.

Count X

COPYRIGHT INFRINGEMENT of "DEVIOUS MINDS" and "Noah"

(17 U.S.C. § 106 and § 501)

By Plaintiff against Defendants

48. Plaintiff incorporates the allegations of paragraphs 1 through 29 of this Complaint as if fully set

forth herein. Plaintiff created Dealing as an original expression of creative writings. The Poem

"*Devious Minds*" is a part of Dealing (2018).

49. Plaintiff has the exclusive rights, pursuant to Section 106 of the Copyright Act, to make

derivative works, distribute and publicly perform her copyrighted Works. Defendants infringed

Plaintiff's exclusive rights under 17 U.S.C. §§ 106 and 602 by creating the song "*Clara Bow*",

"*Down Bad*" and "*Guilty as Sin*?" containing original expressions derived from the poem

"*Devious Minds*" by copying the unique way Plaintiff expressed elements to form protectable

expressions.

The Plaintiff's poem, "*Devious Minds*" includes these verses:

"Its easy to blame and find fault

Easy to accuse and abuse

I know it began before Annie Oakley

But when the papers got a hold of her name

It was a pernicious disease running through the tabloids

Oh, but Annie didn't freeze

The next thing she did, she fought with pride

And the defamatory statements seemed to subside."

The Defendant's song, "*Clara Bow*", includes the lines:

> "You look like Clara Bow in this light
>
> All your life, did you know?
>
> Youd be picked, like a rose
>
> (Which sounds like Plaintiff's poem, "*Sky Tinted Water*",
>
> With the lines "Don't you know?…searching low and high…
>
> Will you show me how to compliment the sky?")

Defendant's song continued…

> "The crown is stained but you're the real queen
>
> Flesh and blood amongst war machines"

The Defendants paraphrased what the Plaintiff wrote, which is a unique expression that describes a person who is being worshipped yet they are being deceitful.  Also, the Defendants' song is about a known figure from the 18th century, and she is being written about in the tabloids. The Plaintiff's poem describes how Annie Oakley was painted in a negative light by the media. The Defendant uses Clara Bow and how she's portrayed negatively by those "in town", yet she's "the real thing". When you compare the poem and the song, they both sound alike.

In the previous complaint, the Defendants compare the poems to Elton John's, "*Candle in the Wind*" but this song is completely different and doesn't use similar expressions. In "*Sky Tinted Water*", the Plaintiff is searching for love which the Defendants wrote in a similar way to describe the same situation.

Prepared with the help of an attorney

The Plaintiff wrote a poem titled *"Noah"* in which a copyright registration was recently obtained. However, the Plaintiff can show proof of when Noah was originally written as it was turned into a song with the help of a contractor on Fiverr in May of 2023.

A verse in Plaintiff's poem *"Noah"* is:

> "Satan sends his Angels/*Deception in Flesh and blood*/Noah built a starship/to escape the red flood".  Contrast this to "Flesh and blood amongst war machines".

The Plaintiff describes those who pretend to be noble humans in flesh and blood fighting a bloody battle (red flood).

A few lines from the Defendants' song, "Down Bad", include:

> "Down bad, *waking up in blood"*

> "Staring at the sky, come back and pick me up" while she is staring at a Starship.

The Defendant's song *"Clara Bow"* (April 19, 2024) includes this verse:

> "Flesh and blood amongst war machines/ You're the new god we're worshipping /Promise to be ... dazzling".

The Plaintiff's poem, *"Devious Minds"*, is about Nellie Bly and how she worked, for a Fortnight (ten days) in an insane asylum. This was added as Exhibit B to show more evidence that the Defendants used the Plaintiff's writings which included a poem about Nellie Bly for their songwriting.

On yet another interesting note, the Defendants' song *"Guilty as Sin*?" is very similar to this poem as well.

Prepared with the help of an attorney

The Defendant sings:

> I'm seeing visions, am I bad? Or mad? Or wise? …Only in my mind?...
>
> How can I be guilty as sin?

The Plaintiff's poem, "*Devious Minds*", include the verse:

> Who are the shifty and the crooked? When we look in the mirror
>
> Do we see a reflection of our wrongdoing and transgressions? How are we
>
> devious? When the world we live in is nothing other than a crime?
>
> Are we going astray from the normal way?
>
> Or is it just a figment of my imagination?
>
> What is devious, if devious is the design?

The Plaintiff's poem, "*Devious Minds*", questions thoughts about the world and whether or not she is devious as it could all just be a "figment of [her] imagination" because she isn't sure what reality is. The Defendant's song. "*Guilty as Sin*?" questions whether she is guilty for imagining things for she isn't sure if she is really experiencing or imagining them. The Plaintiff used an original expression to question her sense of guilt, just as the Defendants did.

A verse in the Defendants' song, "*Manuscript*", is "tears fell in synchronicity with the score" which is strikingly similar to the expression originally written by the Plaintiff in her poem, "*Noah*", where she wrote "we need to come together like musical notes to poetry". Both use "notes" in tandem with writing poetry/lyrics—poetry is a feeling of emotion. Poetry is the pouring of emotions but at the same time, causes one to write or make music. Also, the Plaintiff drew a sketch of musical notes next to a quill pen for the cover of her book, <u>Songs of the Unsung</u>, indicating the process of writing simultaneously creates other art, such as music.

This same sketch of a quill pen with notes was used by the Defendants to reference a historical period in which the songs relate to.

## Count XI

## COPYRIGHT INFRINGEMENT of "STAGNATE"

## (17 U.S.C. § 106 and § 501)

## By Plaintiff against Defendants

50. Plaintiff incorporates the allegations of paragraphs 1 through 29 of this Complaint as if fully set forth herein. Plaintiff created Fallen as an original expression of creative writings. The Poem "*Stagnate*" is a part of Fallen (2018).

51. Plaintiff has the exclusive rights, pursuant to Section 106 of the Copyright Act, to make derivative works, distribute and publicly perform her copyrighted Works. Defendants infringed Plaintiff's exclusive rights under 17 U.S.C. §§ 106 and 602 by creating the song "*Right Where you Left Me*" and "It's Time to Go" containing original expressions derived from the poem "*Stagnate*" by copying the unique way Plaintiff expressed elements to form protectable expressions.

The Plaintiff's poem, "*Stagnate*" includes this verse:

"It's time to go/When will you let me go?/ I continue to drive forward, but you wont let me go…I remain stagnate in this light" and in the poem *Scorpion*, the Plaintiff wrote "I waited at the bar/Didn't know by then you were gone too far".

The Defendant songs "*It's Time to Go* and *Right Where you Left Me*" (both published in 2021) include this text using the same exact words:

"It's time to go" and in "I'm still at the restaurant, right where you left me".

The Plaintiff wrote about waiting at a bar realizing it was time for them to move on, yet the person "at the bar" didn't realize this. The Plaintiff's original expression of being left waiting to signify being stranded even though she not physically at a bar—this is just a form of expression originally created by the Plaintiff in which the Defendants' used for their song.

Count XII

COPYRIGHT INFRINGEMENT of "INVISIBLE MATTER" and "TIME"

(17 U.S.C. § 106 and § 501)

By Plaintiff against Defendants

52. Plaintiff incorporates the allegations of paragraphs 1 through 29 of this Complaint as if fully set forth herein. Plaintiff created *"Invisible Matter"* and *"Time"* as an original expression of creative writings. These poems are a part of <u>Fallen</u> (2018).

53. Plaintiff has the exclusive rights, pursuant to Section 106 of the Copyright Act, to make derivative works, distribute and publicly perform her copyrighted Works. Defendants infringed Plaintiff's exclusive rights under 17 U.S.C. §§ 106 and 602 by writing *"Invisible String"* by copying the unique way Plaintiff expressed elements to form protectable expressions.

The Defendant song, *"Invisible String"*, include these lyrics:

"Were there clues I didn't see?/ All along there was some invisible string tying you to me?/A string that pulled me out of all the wrong arms, right into that dive bar/All along there was some invisible string tying you to me. Cold was the steel of my axe to grind/For the boys who broke my heart".

In the Plaintiff's poem, *"Invisible Matter"*, some verses include,

"She is invisible, she hears the laughter and the cry, she sees the beauty and the pain, she knows everything but reveals not a thing, sometimes she is warm but can turn cold in an

instance, she can stir up a storm and become voracious/She's always by my side whispering in my ear and knowing my deepest thoughts/she travels far and reaches high/She goes thru your soul and entwines your hair, she will always be there as we grow/absorbing the rain and turning it into beautiful rainbows".

The Defendants' song discusses being led by an invisible power bringing both good and bad things which resembles what the Plaintiff wrote.

The Plaintiff's poem, *"Time" (Dealing, 2018)*, includes this verse:

"Time, what is time? All I know, it's never been kind".

The Defendants' song, *"Invisible String"* (July 2020), includes this verse

"Time, mystical time, cutting me open then healing me fine".

The Defendants used the same words to convey the same meaning, questioning time (time is mystical—mysterious) and that Time can hurt "never been kind" and "cutting me open". The Defendant rephrased the Plaintiff's poem, using the same words but changing a few here and there to express the same exact unique expression. Another interesting similarity is in the Defendants' verse: "Gold was the color of the leaves" and the Plaintiff's poem, *"Ingenue",* she wrote "When leaves become Gold".

Count XIII

COPYRIGHT INFRINGEMENT of the

introduction to the book, <u>Fallen </u>2019

(17 U.S.C. § 106 and § 501)

By Plaintiff against Defendants

54. Plaintiff incorporates the allegations of paragraphs 1 through 29 of this Complaint as if fully set forth herein. Plaintiff created <u>Fallen</u> as an original expression of creative writings. The introduction to the book is a part of <u>Fallen</u> (2018).

55. Plaintiff has the exclusive rights, pursuant to Section 106 of the Copyright Act, to make derivative works, distribute and publicly perform her copyrighted Works. Defendants infringed Plaintiff's exclusive rights under 17 U.S.C. §§ 106 and 602 by writing the introduction to "*The Tortured Poets Department*" by copying the unique way Plaintiff expressed elements to form protectable expressions used to compose her introduction.

The Plaintiff's book *<u>Fallen,</u>* 2019 includes a novel plus poems. The introduction, which can be found in the book, includes this paragraph:

> "This anthology combines Kimberly's poetry written throughout the years reflecting the times and a previous published book titled, "<u>Fallen from Grace</u>". The writing was inspired by societal issues, personal challenges of anxiety and fear to expressions of hope and dreams."

The Defendants' used the same words (albeit changing a few) for her introduction for *The Tortured Poets Department* (April 2024) with this paragraph:

> "An anthology of new works that reflect events, opinions and sentiments from a fleeting and fatalistic moment in time — one that was both sensational and sorrowful in equal measure."

The Defendants simply paraphrased the introduction written by the Plaintiff.

---

56. The copyright registrations for "The Works": can be found in **Exhibit A**. Pictures of the pages with poems and other images are included in **Exhibit B**. Also, a chart with page numbers corresponding to the poems and text is presented in **Exhibit C**.

57. A "substantial similarity" exists where the accused work is so similar to the Plaintiff's work that an ordinary reasonable person would conclude that the Defendant unlawfully appropriated the Plaintiff's protectable expression by taking material of substance and value." Stromback, 384 F.3d at 297 (internal quotation marks omitted). In a case such as this, it is appropriate to examine the theme, characters, plot, sequence, pace, and setting for similarities. Williams v. Crichton, 84 F.3d 581, 588 (2d Cir. 1996). In the end, the question is whether, based upon his "net impression" of the works' expressive elements, the ordinary lay observer would find them substantially similar to one another.

58. The Plaintiff wrote many original and unique expressions that are subject to copyright protection. Kearns v. Ford Motor Co., 726 F. Supp. 159 (E.D. Mich. 1989): Robert Kearns, the inventor of the intermittent windshield wiper, sued Ford and Chrysler for copying his invention. On cross-examination, Kearns (litigated pro se), had Ford's expert read the

opening paragraph of Charles Dickens' "*A Tale of Two Cities,*" after which **he had to admit that Dickens had not created any of the words he used in that famous paragraph, but that the artistry came in how those words were put together.**

59. Access can be proven by showing that the Plaintiff's work was widely disseminated or that the defendant encountered it through a chain of events, such as working in the same industry. It is important to note that in the digital age, **access is often assumed. Actual viewing of the protected material is not required to establish access**; access means merely a **reasonable opportunity to view the material.** See Grubb v. KMS Patriots, L.P., 88 F.3d 1, 3 (1st Cir. 1996). Plaintiff has shown sufficient uncontested material facts to establish probative similarity. Coquico, 562 F.3d at 67 ("What we have called "probative similarity" can, when accompanied by proof of access, serve as harbinger of actual copying.").

60. In the previous complaint, the Defendants mentioned that the text contains metaphors that aren't copyrightable. However, the Plaintiff did not use metaphors or common phrases. Metaphors compare two things that can be real by themselves. For example, the phrase "she sings like a lark" is a metaphor as it compares a female to that of a songbird. Short phrases include names, titles, and slogans and are <u>not</u> full sentences. The Plaintiff's writing includes complete sentences which contain a subject and a predicate, conveying a complete thought using original expressions.

61. According to The Copyright Society (Copyrightsociety.org): The words you use to tell a story, the picture that you paint, and the lyrics to a song [or poem] you wrote are all types of "expression." Until you set these things down on paper or in a Recording, they are nothing more than ideas.

62. The Plaintiff provided a picture of a part of a dance that was not included in the Counts section because Original1 is not a professional dancer and only added it to reveal more evidence of copying. Original1 does not claim infringement with her written poetry about Nellie Bly. The passages and images of Nellie Bly were also included in the Exhibits section to reveal more evidence of copying.

63. Refer to Exhibit C for a side-by-side comparison between the Plaintiff's work and that of the Defendants with specific page numbers, paragraph numbers, verse numbers, images and text.

## FACTS

64. Plaintiff is the Owner of a valid copyright registration in the Works.

65. Defendants had access to the Works. The Work was publicly available for sale online.

66. Defendants have never been licensed or given permission to use the Works, at issue in this action, for any purpose.

67. Defendants' infringing acts include, but are not limited to, unlawfully creating, recording, manufacturing, producing, selling, licensing marketing and/or distributing the musical compositions and sound recordings for the songs listed in the Counts section in this complaint.

68. The Defendants infringed Plaintiff's exclusive rights under 17 U.S.C. §§ 106 and 602 by using the infringing derivative songs, distributing copies of the works, and publicly performing the infringing derivative songs online and in concerts without Plaintiff's authorization in violation of 17 U.S.C. § 501.

69. The Plaintiff found Defendants took from Plaintiff's Work unique and creatively written expressions that appeal to readers for whom the Work is composed, that Defendants wrongfully copied protectable elements which belong to the Plaintiff without permission.

Prepared with the help of an attorney

70. The Defendants have infringed Plaintiff's rights by creating and performing derivative works of such a large quantity of Plaintiff's poems that the possibility of independent creation, coincidence or use of a prior common source are precluded. The portions of the Work copied comprise protected original expression and are of such importance to the copied work that the appropriation is actionable.

71. The Defendants acted with reckless disregard of the possibility that their conduct represented infringement so as to make the infringing conduct willful by making derivative works from the Work that was publicly sold as a copyrighted book.

72. The Plaintiff never gave Defendants permission or authority to copy or prepare derivative works of the 'Works' at issue in this case. Defendants profited by distributing and performing the derivative works in the District. Defendants' acts of infringement are willful, intentional and purposeful, in disregard of and with indifference to Plaintiff's rights.

73. Defendants have exploited and continue to exploit the Plaintiff's Works in this District, the State of Florida, and throughout the United States and the World by reproducing, preparing derivative works, distributing, licensing, and publicly performing the Works.

74. Defendants have profited substantially from their infringing activities, have collected, and continue to collect, fees and royalties from the sale of the infringing work or any derivatives thereof, and have retained a portion of those fees and royalties without submitting any amount to Plaintiff. Defendants should be held jointly and severally liable for all profits derived as a result of their infringing activities, whether or not collected and retained by them, as practical partners.

75. As a result of Defendants' willful infringement of Plaintiffs' copyrights and exclusive rights under copyright, Plaintiffs are entitled to maximum statutory damages pursuant to 17 U.S.C.

Prepared with the help of an attorney

§ 504(c), or to recover their actual damages and profits attributable to the infringement pursuant to 17 U.S.C. § 504(b), at Plaintiffs' election, and such other relief as is provided by law. Plaintiffs are further entitled to their attorney's fees and full costs pursuant to 17 U.S.C. § 505.

76. The conduct by Defendants is causing and, unless enjoined and restrained by this Court, will continue to cause Plaintiffs great and irreparable injury that cannot fully be compensated or measured in money. Pursuant to 17 U.S.C. §§ 502 and 503, Plaintiffs are entitled to injunctive relief prohibiting Defendants from further infringing Plaintiffs' copyrights.

77. The Plaintiff found that the Defendants' infringement occurred in approximately the same timeframe (whereas Plaintiff's works were published prior to the Defendants'), and the infringement was on the same topics using many of the same unique, never written before, creative expressions that made the Plaintiff's Works valuable and appealing to other publishers and literary magazines, including poetry contests and other creative writing pursuits. Thomas Jefferson used the phrase "the pursuit of happiness" in *The Declaration of Independence* which is essential to preserving liberty so long as one does not trample on the rights of others to pursue their happiness.  All people are born with the right to a life of meaning and purpose and can contribute to society in positive ways. The Plaintiff's rights were violated, and the Defendants continue to do so without regard to the copyright registrations the Plaintiff obtained to secure her Works. The Defendants' infringement amounts to the unlawful appropriation of Plaintiff's copyrighted material.

## CAUSE OF ACTION

### (Copyright Infringement - 17 U.S.C. § 101, et seq.)

78. Plaintiff repeats and realleges each of the foregoing Paragraphs 1—79 as though fully set forth herein. The Defendants' reproduction, distribution, and sales of the infringing work, including the *Lover* book, *Folklore*, *Midnights*, and *The Tortured Poets Department* in the United States and internationally, continue to this day, and Defendants have not deigned to compensate the copyright owner for the use of the copyrighted work. The Defendants' reproduction, distribution, licensing, merchandizing, and economic exploitation of the albums, including the work being used in the "Eras Tour", and authorizing others to do the same, infringes Plaintiff's exclusive rights under the Copyright Act.

79. As a direct and/or proximate result of the Defendants' wrongful conduct, the Plaintiff has been irreparably harmed. Said injuries are continuing and will not abate in the future. Such reproduction and release were wholly unauthorized as it was without any license or consent of authority from the Plaintiff. By virtue of this unauthorized commercial exploitation, the Defendants have realized illegal revenues.

80. Pursuant to 17 U.S.C. § 504(c), the Plaintiff is entitled to statutory damages since the infringement occurred after the copyright was registered.

Prepared with the help of an attorney

81. WHEREFORE, the Plaintiff prays for relief and respectfully requests that judgment be
entered against the enumerated Defendants, as follows:

A. For judgment that all the Defendants, by virtue of their involvement with the creation,
publication, reproduction, public dissemination, and distribution of the albums: *Lover*,
*Folklore*, *Midnights* and *The Tortured Poet's Department*, as well as material used in the
"Eras Tour", have violated the Copyright Act;

B. For judgment assessing Defendants for the damages in excess of twenty-five million
dollars suffered by Plaintiff, including an award of actual damages and Defendants' profits
attributable to the infringement, or statutory damages (at Plaintiff's election), under the
Copyright Act, as well as costs and attorney's fees to the full extent provided for by Sections
501, 504 and 505 of the Copyright Act, 17 U.S.C. §§ 501, 504 and 505; damages and profits
shall include all profits and damages resulting from exploitation of the work domestically
and internationally.

Prepared with the help of an attorney

## DEMAND FOR TRIAL BY JURY

82. Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff respectfully

demands a trial by jury

Dated: ~~March~~ *Feb 28th*, 2025

Kimberly Marasco, Plaintiff

1561 Pheasant Walk, Apt C
Fort Pierce, FL 34950
Marasco_kim@yahoo.com
772.277.1785

Prepared with the help of an attorney