# Exhibit B: AI Textual Analysis

**AI Textual Similarity Analysis of Plaintiff's Works and Defendants' Lyrics**

This document presents an AI-based textual similarity analysis between Plaintiff Kimberly Marasco's copyrighted works and the Defendants' lyrics. Each count in the Second Amended Complaint has been assessed for distinctive overlaps, strength of signals, and vulnerability areas.

**Methodology**

**Each count was analyzed using four key factors:**

1. Lexical Echoes – Identical or nearly identical wording.
2. Distinctive Metaphors or Devices – Uncommon phrasing or imagery.
3. Sequence Similarity – Order and flow of ideas across lines.
4. Context Match – How the overall theme aligns beyond generic topics.

**Signal strength is categorized as High, Medium, or Low.**

**Per-Count Breakdown**

| Count | Signal Strength | Notes |
|---|---|---|
| Count I | High | Strong corporate-power narrative parallels; phrasing shows clear overlap with Defendants' lyrics. |
| Count II | High | Exact verse matches and institutional imagery make this a strong count. |
| Count III | High | Uncommon metaphor involving tears provides distinctive overlap. |
| Count VI | High | Unique device where the speaker embodies the storm strongly echoed in Defendants' lyrics. |

| Count XII | High | Multiple rare phrases and uncommon thematic pairings give this a strong similarity signal. |
| Count XIII | High | Overlap in introductory framing of works, distinctive devices, and sequencing. |
| Other Counts | Medium to Medium-Low | Some parallels exist, but phrasing is more generic or based on widely used tropes, making them less persuasive as protectable expression. May be used in conjunction with other supportive evidence. |

**Recommendations for Court Use**

- Supports each strong count with precise quotes from Plaintiff's works and Defendants' lyrics.
- Anchors the timeline with publication and release dates.
- Highlights uniqueness of devices (e.g., rare verses).
- Avoids over-relying on short or generic phrases.
- Focuses on strongest counts (I, II, III, VII, VIII, and XII) as anchors for substantial similarity.

## Exhibit B-2: Copyright Law

### 1. Ownership and Validity of Copyright
- **Registration or Evidence of Creation**: First, they confirm the plaintiff actually owns a valid copyright. A certificate of registration from the U.S. Copyright Office is strong evidence.
- **Originality**: The work must contain at least some minimal degree of creativity and originality, even if modest.

### 2. Copying of the Work
Because direct evidence of copying (like an admission) is rare, courts allow proof through circumstantial evidence, focusing on two key elements:

**a. Access**
- Did the alleged infringer have a reasonable opportunity to view or obtain the work?
- This can be shown by widespread dissemination (e.g., books sold online), direct submission, shared industry circles, or even striking similarity so unique that access can be inferred.

**b. Substantial Similarity**
Experts and courts compare the two works to see if the protectable elements are "substantially similar." They separate **idea** from **expression**:
- **Idea–Expression Dichotomy**: Copyright protects the *specific expression* of an idea, not the general idea itself.
- **Protectable Elements**: Original phrases, imagery, structure, arrangement, or combination of elements.
- **Unprotectable Elements**: Facts, common phrases, scènes à faire (standard elements expected in a genre).

### 3. Legal Tests for Similarity
Different courts apply slightly different frameworks, but the most common include:
- **Ordinary Observer Test** (sometimes called the "lay listener/reader" test): Would an ordinary person, without dissecting or expert analysis, recognize that one work was appropriated from the other? (*Please Note: A **Co-Worker** at a job Plaintiff worked at in **2020** made a comment about the similarities between her poems and Taylor Swift lyrics yet, Plaintiff disregarded it at the time).
- **Extrinsic vs. Intrinsic Test** (Ninth Circuit approach):
  - *Extrinsic*: Objective analysis of protectable elements (plot, themes, characters, sequence, lyrics, etc.), often with expert testimony.
  - *Intrinsic*: Subjective judgment by the ordinary observer of overall "total concept and feel."
- **Striking Similarity Doctrine**: If the works are so alike that independent creation is virtually impossible, similarity alone can establish copying even without proof of access.

### 4. Scope of Protection
- **Thin vs. Broad Protection**:
  - Works with limited creative choices (e.g., factual compilations, short phrases) get "thin" protection—requiring "virtually identical" copying.
  - Highly creative works (like poems, songs, novels) receive broad protection.