

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT PIERCE DIVISION

Case No. 2:25-cv-14067-AMC

KIMBERLY MARASCO,

   *Plaintiff,*

v.

TAYLOR SWIFT, et al.

   *Defendants.*

### PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

**I. INTRODUCTION**

   Plaintiff respectfully moves this Court for a preliminary injunction to prevent Defendants from continuing to infringe Plaintiff's copyrighted works through the ongoing sale, performance, and distribution of songs, and through the imminent release of the Disney+ docuseries "The End of an Era". The series, scheduled to begin streaming on December 12, 2025, will broadcast performances of the infringing works to millions of viewers worldwide, causing irreparable harm to Plaintiff's exclusive rights to her works. As detailed in the attached AI Textual Similarity Analysis (Exhibit A) and Side-by-Side Chart analysis (Exhibit B), and copyright registrations for all works (Exhibit C). Plaintiff's claims demonstrate strong textual overlaps between her copyrighted poetry and published books and Defendants' lyrics, supporting a substantial likelihood of success on the merits.

## II. LEGAL STANDARD

A preliminary injunction is warranted where the movant demonstrates:

1. A substantial likelihood of success on the merits;

2. Irreparable harm absent relief;

3. That the balance of equities tips in the movant's favor; and

4. That the injunction serves the public interest.

See Winter v. Natural Resources Defense Council, Inc., 555 U.S. 7 (2008); eBay Inc. v. MercExchange, L.L.C., 547 U.S. 388 (2006).

## III. ARGUMENT

A. Plaintiff is Likely to Succeed on the Merits

Plaintiff's copyright infringement claims are strong, as evidenced by the AI Textual Similarity Analysis attached hereto as Exhibit A. The AI Textual Similarity Analysis, attached hereto as Exhibit A, serves as a preliminary analytical tool employing objective factors such as lexical echoes (identical or nearly identical wording), distinctive metaphors or devices (uncommon phrasing or imagery), sequence similarity (order and flow of ideas), and context match (overall thematic alignment beyond generic topics) to evaluate overlaps between Plaintiff's copyrighted works and Defendants' lyrics. This analysis is supplemented by Plaintiff's own declarations and evidence, including detailed side-by-side comparisons and timelines of publication, which further substantiate the claims of substantial similarity. Pursuant to Federal Rule of Evidence 1006, the report should be admissible as a summary or visualization of voluminous writings, enabling the Court to efficiently review the complex textual data without requiring examination of the full underlying materials.

This analysis, conducted using advanced textual comparison methods, evaluates overlaps between Plaintiff's copyrighted works and Defendants' lyrics using signal strengths rated as High, Medium, or Low based on the factors described above. The analysis identified High signal strength in multiple counts from Plaintiff's Second Amended Complaint, indicating distinctive and protectable overlaps:

- Count I: Strong corporate-power narrative parallels with clear phrasing overlaps.
- Count II: Exact phrase matches and institutional imagery.
- Count III: Uncommon metaphor involving tears.
- Count VI: Unique device where the speaker embodies the storm, strongly echoed in Defendants' lyrics.
- Count XII: Multiple rare phrases and uncommon thematic pairings.
- Count XIII: Overlap in introductory framing, distinctive devices, and sequencing.

Other counts show Medium to Medium-Low signals, involving more generic phrasing, but can support the overall case when combined with the stronger counts. The report recommends focusing on the **strongest** to **medium-strong** counts (e.g., I, II, III, IV, VI, VII, VIII, XII, and XIII) to anchor substantial similarity, supported by precise quotes, timelines of publication and release dates, and the uniqueness of devices including original expressions. This evidence demonstrates that Defendants' works are substantially similar to Plaintiff's protectable expression, not merely ideas or common tropes. See Feist Publications, Inc. v. Rural Telephone Service Co., 499 U.S. 340 (1991) (protecting original expression in copyrighted works). Plaintiff's works were published prior to Defendants' releases, further supporting access and copying.

B. Plaintiff Will Suffer Irreparable Harm

Defendants' continued sale, performance, and streaming of the infringing songs cause ongoing dilution of Plaintiff's creative control and market position for her poetry and published books. Once the docuseries is broadcast globally, Plaintiff's works will be irreversibly embedded in cultural products beyond Plaintiff's reach, without any credit or acknowledgment of Plaintiff's material. Courts recognize that ongoing distribution of infringing works creates irreparable harm. In Harper & Row Publishers, Inc. v. Nation Enterprises, 471 U.S. 539 (1985), the Supreme Court emphasized the author's right to control first publication. Similarly, in Bridgeport Music, Inc. v. Dimension Films, 410 F.3d 792 (6th Cir. 2005), the court held that even small unauthorized uses of music constitute infringement, underscoring the harm of continued exploitation. Here, Defendants' performances and streaming broadcasts embed Plaintiff's works into cultural products, permanently diluting her creative control.

C. Monetary Damages Are Inadequate

Damages cannot compensate for the loss of control over Plaintiff's copyrighted works or the cultural impact of their unauthorized use. The infringing songs are not isolated incidents but are continuously exploited through live performances, streaming platforms, the Eras Tour movie, merchandise including records and CDs, and now a global docuseries. In A&M Records, Inc. v. Napster, Inc., 239 F.3d 1004 (9th Cir. 2001), damages could not compensate for widespread unauthorized distribution of music. Likewise, Plaintiff cannot be made whole by damages alone, as the infringing songs are continuously exploited in concerts, streaming, and now a global docuseries.

D. Balance of Equities Favors Plaintiff

While Defendants may claim financial loss or contractual disruption, such hardships are outweighed by Plaintiff's right to control her own creative works that she spent years writing and publishing on her own. Courts routinely recognize that protecting intellectual property outweighs commercial inconvenience. Tailored relief—such as editing or delaying release—can mitigate Defendants' burden. Courts often weigh commercial inconvenience against the right to control creative works. In Capitol Records, LLC v. ReDigi Inc., 934 F. Supp. 2d 640 (S.D.N.Y. 2013), the court prioritized copyright enforcement over a digital marketplace's business model. Here, Defendants' hardship (e.g., editing or delaying release) is outweighed by Plaintiff's right to prevent unauthorized use.

E. Public Interest Supports Injunction

The public interest lies in enforcing copyright law and protecting creators' rights. Allowing Defendants to continue infringing undermines the integrity of the creative marketplace. Upholding Plaintiff's rights ensures respect for intellectual property and deters future violations. In Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd., 545 U.S. 913 (2005), the Court stressed deterrence of infringement in the entertainment industry. Upholding Plaintiff's rights ensures respect for intellectual property and deters future violations.

**IV. RELIEF REQUESTED**

Plaintiff respectfully requests that this Court issue a preliminary injunction:

1. Halting release of The End of an Era docuseries episodes containing infringing works;
2. Prohibiting further sale, streaming, or performance of the infringing songs;
3. Alternatively, requiring Defendants to remove or edit infringing content prior to distribution.

The list of songs that contain infringing lyrics include: "The Man," "My Tears Ricochet," "Who's Afraid of Little Old Me?," "I Can Do It With a Broken Heart," "Hoax," "Illicit Affairs," "Guilty As Sin?," "Clara Bow," "Down Bad," "The Manuscript," "Midnight Rain," "Robin," "Invisible String and "The Great War."

## V. CONCLUSION

Absent injunctive relief, Plaintiff will suffer irreparable harm that monetary damages cannot remedy. The balance of equities and public interest strongly favor protecting Plaintiff's rights. Plaintiff therefore respectfully requests that this Court grant the motion for preliminary injunction.

November 17. 2025

Respectfully Submitted,

*Kimberly Marasco*

Kimberly Marasco
Plaintiff, pro se
1561 Pheasant Walk Apt C
Fort Pierce, FL 34950
772.277.1785
marasco_kim@yahoo.com

**CERTIFICATE OF SERVICE**

I hereby certify that on November 17, 2025, I served a true and correct copy of the foregoing Motion on counsel for Defendants via email pursuant to Federal Rule of Civil Procedure 5(b)(2)(E).

*Kimberly Marasco*

Kimberly Marasco