**UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
FORT PIERCE DIVISION**

Case No. 2:25-cv-14067-CANNON

KIMBERLY MARASCO,

     *Plaintiff,*

v.

TAYLOR SWIFT; UNIVERSAL MUSIC
GROUP, INC.; and REPUBLIC RECORDS,

     *Defendants.*

**<u>DEFENDANTS' OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION</u>**

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

INTRODUCTION ........................................................................................................... 1

BACKGROUND ............................................................................................................. 2

LEGAL STANDARD ..................................................................................................... 4

ARGUMENT 5

    I.    Plaintiff Cannot Succeed on the Merits of Her Copyright Infringement Claims. ..................................................................................................... 5

        A.    Plaintiff's Claims Fail Because She Has Only Alleged Copying of Unprotected Expressions. ........................................................... 6

        B.    Plaintiff's Claims Also Fail Because She Cannot Establish Access or Substantial or Striking Similarity, the Requisite Components of Unlawful Copying. ........................................................................ 8

    II.    Plaintiff Has Not Shown Any Potential for Irreparable Harm Because Any Purported Harm is Highly Speculative and Compensable. .................................. 13

        A.    Plaintiff's Speculative Alleged Harms Cannot Support Injunctive Relief. ................................................................................................... 13

        B.    Plaintiff's Alleged Harms Are Monetarily Compensable, Not Irreparable. ............................................................................................ 15

    III.    The Balance of Hardships Weighs in Favor of Defendants. ............................... 16

    IV.    Injunctive Relief Would Not Be in the Public Interest. ...................................... 18

CONCLUSION ............................................................................................................. 19

Defendants Taylor Swift ("Artist"), Universal Music Group, Inc., and Republic Records (collectively, "Defendants") hereby submit their opposition to Plaintiff's Motion for Preliminary Injunction [ECF 70] ("Motion"). For the reasons explained herein, the Motion should be denied.

## INTRODUCTION

Plaintiff Kimberly Marasco ("Plaintiff" or "Marasco") has spent the better part of two years, in two different actions, hawking harassing and frivolous copyright infringement claims against Artist and related companies. These claims have already been dismissed with prejudice once. Now, days before Defendants are scheduled to file their motion to dismiss those claims for the second time, Plaintiff seeks extreme and inappropriate relief: to prohibit further sale and distribution of certain songs; and to halt the release of a forthcoming docuseries titled "The End of an Era." As has previously been shown, and as Defendants will show again in their forthcoming motion to dismiss, Marasco's claims are absurd and legally baseless. For instance, the concept of betrayal or the words "fire" or "love" cannot be owned by one person, as basic themes or words are not protectable by copyright law. The Court has previously dismissed these claims with prejudice, and Defendants are confident it will do so again.

In the meantime, Plaintiff's Motion should be easily denied. Other than articulating the four-part standard for obtaining a preliminary injunction, Plaintiff includes next to no analysis of those factors and certainly nothing to suggest the preliminary relief she seeks is appropriate. As explained below, Plaintiff has no likelihood of success on the merits, as all of her copyright claims depend on uncopyrightable themes/metaphors or short phrases. To the extent the Court goes any further (it need not), Plaintiff has also failed to show that *any* harm will come to her—let alone irreparable harm—without an injunction, that the balance of hardships and/or public interest favor the relief she seeks, *or that injunctive relief is even the right remedy here* (it is not). The Motion is

1

utterly frivolous and harassing, and should be denied.

## BACKGROUND

In 2024, Marasco brought copyright infringement claims against Artist and a related company, Taylor Swift Productions, Inc. ("TSP"). *Marasco v. Taylor Swift Prods., Inc.*, No. 2:24-cv-14153-AMC ("*Marasco I*"). After failing to serve Artist, all of Plaintiff's claims against TSP were dismissed with prejudice. *Marasco I*, ECF 79 ("Order"). Specifically, the Court found: "none of Plaintiff's poems qualifies as protectible expression under copyright law, and, regardless, Plaintiff has not plausibly alleged that Defendant copied them." *Id.* at 4-5. That should have been the end of Plaintiff's frivolous and harassing crusade against Artist. Unfortunately, it was not.

Instead, Plaintiff filed a second action, this time against Artist, her record label, and certain co-writers of songs the Court has already found do not infringe on Plaintiff's poems. [ECF 1].[1] Plaintiff has amended her complaint twice, and the Second Amended Complaint ("SAC"), filed October 14, 2025, is the currently operative complaint. [ECF 65]. Notably, the SAC was filed *after* the announcement of the End of an Era docuseries[2]—which Plaintiff now seeks to enjoin—but includes no allegations about the docuseries.

As to the claims in this case, they are a repackage of the same claims that were previously dismissed with prejudice in *Marasco I*. For purposes of this Opposition, Defendants recount some of the allegations in the SAC relevant to denying the Motion. Many of these allegations are also relevant to Defendants' forthcoming motion to dismiss and will be laid out in further detail there.

Plaintiff claims to have authored two books, *Dealing with a Chronic Illness: Vestibular*

---

[1] Both co-writers, Jack Antonoff and Aaron Dessner, have since been dismissed from the case and are not subject to this Motion. [ECF 68, 69].

[2] *See, e.g.*, ABC News (Oct. 13, 2025, at 8:18 AM), https://abcnews.go.com/GMA/Culture/taylor-swift-eras-tour-docuseries.

*Neuritis* ("*Dealing*") and *Fallen from Grace* ("*Fallen*"), and a poem, "Noah." [SAC ¶¶ 4, 9-10]. Plaintiff purportedly obtained copyright registration for her poetry book *Dealing* from the U.S. Copyright Office allegedly effective July 11, 2017, under registration number TXu2061218. [SAC ¶¶ 9, 43, Ex. A-1], and for her poetry book *Fallen* from the U.S. Copyright Office allegedly effective May 27, 2020, under registration number TXu2200550. [SAC ¶¶ 9, 43, Ex. A-2]. Plaintiff inconsistently alleges that *Dealing* was later retitled *Fallen from Grace*, which has since been retitled to *Songs of the Unsung*. [SAC ¶¶ 4, 9]; *Marasco I*, ECF 1-1 at 3 (stating that the title for *Dealing* was later changed to *Songs of the Unsung*), ECF No. 26 at 3 (stating title for *Fallen from Grace* was later changed to *Songs of the Unsung*). Plaintiff did not include any similar copyright registration information for *Songs of the Unsung*. Plaintiff allegedly obtained copyright registration for her poem, "Noah," from the U.S. Copyright Office effective August 11, 2024, under the registration number TX9417589. [SAC ¶ 10, Ex. A-3].

In the SAC, Plaintiff alleges, without support, that Defendants copied her works *Dealing*, *Fallen*, *Songs of the Unsung*, and "Noah" in twelve separate counts of purported copyright infringement. [SAC ¶ 31]. The counts include allegations of copying of (i) ubiquitous metaphors and themes found throughout the world in countless works of art and human experiences, including ideas about a "female worker navigating a patriarchal corporate system," a woman being "gaslighted," and "being 'submerged' under water." [SAC ¶¶ 57-58, 68, 86]; and/or (ii) individual words or short phrases (which are not afforded copyright protection in any circumstance) plucked from random spots within the works, such as: "love," "tears," "running," "laughter," "time," "rain," "sky," "my waves," "fuse," "cruel," "mean," "ingenue," "fire," "desire," "battles," "gold," "invisible," "flesh and blood," "it's time to go," and "anthology." [SAC ¶¶ 54-55, 73-74, 80-81, 84-85, 94-97, 112-113, 118-19, 124-27, 131-32, 135, 137-38, 142-45, 148, 151-52; *see also* Order

at 7-8 (finding nearly identical expressions noncopyrightable)]. Indeed, a comparison of the Works shows there are **no** similarities between any of them and Plaintiff's poems. Full lyrics of each of the allegedly infringing songs identified in the SAC are included as **Exhibit A**.

In addition to asserting baseless copyright claims that have already been rejected with prejudice by the Court, Plaintiff now amplifies her frivolous and harassing campaign in an attempt to damage Artist's reputation and career by seeking a preliminary injunction to prevent the release of a docuseries, and to otherwise prevent the sale or performance of the allegedly infringing songs. [ECF 70 at 1, 5]. Notably, Plaintiff provides no evidence that any of the at-issue songs are contained in the docuseries. Nor does Plaintiff provide any evidence that the Defendants have any ability to halt the release or distribution of the docuseries. Plaintiff's only support for her Motion is an AI-generated "Textual Similarity Analysis" and a chart of excerpts of Plaintiff's poems and Artist's songs.  [ECF 70-1, 70-2]. Those self-generated documents are proof of nothing.

## LEGAL STANDARD

A "preliminary injunction is an extraordinary and drastic remedy" that is  "never awarded as of right." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008); *United States v. Jefferson Cnty.*, 720 F.2d 1511, 1519 (11th Cir. 1983). Such drastic relief is only proper where the movant clearly establishes: (1) a substantial likelihood of success on the merits; (2) that irreparable injury will be suffered if the relief is not granted; (3) that the threatened injury outweighs the harm the relief would inflict on the nonmovant; and (4) that the entry of the relief would serve the public interest. *Siegel v. LePore*, 234 F.3d 1163, 1176 (11th Cir. 2000); *Winter*, 555 U.S. at 20. The Eleventh Circuit places heavier emphasis on the first two prongs—likelihood of success on the merits and irreparable harm. *See Wood v. Fla. Dep't of Educ.*, 142 F.4th 1286, 1289 (11th Cir. 2025) ("If the movant is unable to establish a likelihood of success on the merits, a court need not

consider the remaining conditions prerequisite to injunctive relief." (citation omitted)); *Hoop Culture, Inc. v. Gap Inc.*, 648 F. App'x 981, 984 (11th Cir. 2016) (describing a showing of irreparable injury as "the *sine qua non* of injunctive relief"). "The burden of persuasion in all of the four [preliminary injunction] requirements is at all times upon the plaintiff." *Jefferson Cnty.*, 720 F.2d at 1519 (citation omitted). Failure to establish any one of these prerequisites is fatal. *ACLU of Fla., Inc. v. Miami-Dade Cnty. Sch. Bd.*, 557 F.3d 1177, 1198 (11th Cir. 2009). Here, Plaintiff fails to satisfy a single prerequisite for obtaining the extreme preliminary relief she seeks.

## ARGUMENT

## I.   Plaintiff Cannot Succeed on the Merits of Her Copyright Infringement Claims.[3]

To show a likelihood of success on the merits, Plaintiff must show that she is likely to succeed on the twelve baseless counts of copyright infringement articulated in the SAC. *Wood*, 142 F.4th at 1289.  Plaintiff has come nowhere close to making this showing.

To state a claim for copyright infringement, Plaintiff must prove "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co*., 499 U.S. 340, 361 (1991). Under the second prong, plaintiff must prove that Defendants unlawfully "copied portions of the plaintiff's [work]" *and* that "those elements of the [work] that have been copied are protected expression and of such importance to the copied work that the appropriation is actionable." *MiTek Holdings, Inc. v. Arce Eng'g Co.*, 89 F.3d 1548, 1554 (11th Cir. 1996) (quoting *Gates Rubber Co. v. Bando Chem. Indus., Ltd.*, 9 F.3d 823, 832 (10th Cir. 1993)). Plaintiff has not, and cannot, make this showing.

---

[3] Defendants' forthcoming motion to dismiss the SAC and any reply thereto will set forth in detail the reasons that each of Plaintiff's twelve counts should be dismissed with prejudice. For judicial efficiency, Defendants do not include all of those arguments here, but expressly preserve and do not waive, and to the extent necessary, incorporate them by reference. *See* Fed. R. Civ. P. 10(c).

## A. Plaintiff's Claims Fail Because She Has Only Alleged Copying of Unprotected Expressions.

First, the SAC alleges infringement of expressions—metaphors, themes, ideas, and single words or short phrases—which are not copyrightable. [SAC ¶¶ 52-154]. For example, for one of Plaintiff's self-proclaimed "stronger counts" [ECF 70 at 3], Plaintiff claims that the song "*The Man*" infringed on the expression of a woman working in a male-dominated corporate system and the "rigged-race" metaphor. [SAC Count I, ¶¶ 52-58]. For another of her "stronger counts," Plaintiff claims that the theme or metaphor that tears reflect pain in a relationship is copyrightable, and that both Plaintiff's poem "Innocence Lost" and the song "*My Tears Ricochet*" include that theme. [SAC Count III, ¶¶ 79-81]. In one of Plaintiff's "medium-strong counts," she alleges that Defendants infringed on a "metaphor equating love with the beauty and vastness of the sky," which allegedly appears in Plaintiff's poem "Sky Tinted Water" and in the song "*Illicit Affairs*." [SAC Count IV, ¶¶ 92-97]. It is worth noting that "*Illicit Affairs*" does not reference the sky at all. **Ex. A** at 10-11.

None of these examples and none of the other, similarly common expressions contained in Plaintiff's counts support a claim for copyright infringement. It is well-established that ideas, concepts, metaphors, and themes are *not* protected expressions and therefore *not* actionable. 17 U.S.C. § 102(b) ("In no case does copyright protection for an original work of authorship extend to any **idea**, procedure, process, system, method of operation, **concept**, principle, or discovery" (emphasis added)); 37 C.F.R. § 202.1(a); *Beal v. Paramount Pictures Corp.*, 20 F.3d 454, 460 (11th Cir. 1994) ("[I]deas and other general themes . . . are not susceptible to copyright protection."); *Portionpac Chem. Corp. v. Sanitech Sys., Inc.*, 217 F. Supp. 2d 1238, 1246 (M.D. Fla. 2002) ("Noncopyrightable elements include material traceable to common sources, the public domain, or custom, as well as ideas, facts, cliches, or metaphors."). This Court applied these

principles when it dismissed Plaintiff's claims in *Marasco I*. [Order at 7 (noting "metaphors, contexts, and themes" are not copyrightable)]. And indeed, the Motion provides no support or argument (nor could it) for extending copyright protection to these generic expressions. Plaintiff cannot claim that she is likely to succeed on these metaphor- and theme-based counts.

Second, the SAC claims infringement based on single words or short phrases, which are also not copyrightable. For instance, Plaintiff claims infringement in a "stronger count[]" for "[e]xact phrase matches" [ECF 70 at 3] of "caged me" and "I'm crazy,"[4] which appear in both Plaintiff's poem "Whirlwind" and the song "W*ho's Afraid of Little Old Me?*." [SAC Count II, ¶¶ 62-63, 66-67]. As other examples, in Count VI, Plaintiff claims that the song "*Clara Bow*" uses the phrase "flesh and blood" that appears in Plaintiff's poem "Noah," [SAC Count VI, ¶¶ 112-13], and in Count VIII, Plaintiff claims that a lyric from "*Long Story Short*" describing waves is "directly echoed" in a phrase from Plaintiff's poem "Delusional Reality" using the words "waves" and "shore." [SAC Count VIII, ¶ 127].

Under black letter law, these purported similarities are nowhere near copyrightable: "[w]ords and short phrases" are not copyrightable and therefore, cannot be infringed upon. 37 C.F.R. § 202.1(a); *Vallejo v. Narcos Prods. LLC*, 833 F. App'x 250, 259 n.3 (11th Cir. 2020) (concluding even "almost identical" copying of "short phrases" cannot be protected because they "are not subject to copyright protection"); *Brandon v. New Power Generation*, No. 15-cv-22738, 2017 WL 1437560, at *4 (S.D. Fla. Apr. 3, 2017) (dismissing claim under Rule 12 and holding short phrases are "not copyrightable, and [are] not an appropriate basis for claiming 'substantial similarity' for the purposes of an infringement claim"). Again, this Court previously found as much

---

[4] The SAC misstates the lyrics to the song as "you caged me and told me I'm crazy." [SAC ¶ 63]. The lyric is in fact "You caged me and then you called me crazy." **Ex. A** at 5.

when it dismissed Plaintiff's claims in *Marasco I*. [Order at 7-8]. Plaintiff will not succeed on her

counts claiming infringement for single words and short phrases and has failed to show a likelihood

of success on the merits.

**B. Plaintiff's Claims Also Fail Because She Cannot Establish Access or Substantial or Striking Similarity, the Requisite Components of Unlawful Copying.**

The fact that the counts are based on uncopyrightable expressions is fatal to Plaintiff's

claims, and the Court need not examine remaining elements for the claims to fail. *Vallejo*, 833 F.

App'x at 257 ("Before determining whether there is substantial similarity between two works [an

essential element of copying], we must first separate the unprotected facts from the protected

expression of those facts." (citation omitted)); *Feist*, 499 U.S. at 353 (stating that the Copyright

Act "confer[s] copyright protection only on those elements of a work that were original to the

author").

However, should the Court continue, the claims fail for the additional reason that Plaintiff

cannot establish any of the elements of unlawful copying here: (1) Defendants' access to the works

and (2) substantial similarity or striking similarity of the works.[5] Because the SAC contains no

allegations of direct evidence of copying, Plaintiff may establish copying by demonstrating that

the defendant had access to plaintiff's work and that the works are "so substantially similar . . .

that an average lay observer would recognize the alleged copy as having been appropriated from

the original work." *Calhoun v. Lillenas Publ'g*, 298 F.3d 1228, 1232 (11th Cir. 2002) (citation

omitted) (involving pro se plaintiff); *Davis v. Raymond*, No. 12-cv-22578, 2012 WL 12868729, at

---

[5] To state a claim for copyright infringement, Plaintiff must plead copying of protected elements of expression in her works through direct or indirect evidence. *Sieger Suarez Architectural P'ship, Inc. v. Arquitectonica Int'l Corp.*, 998 F. Supp. 2d 1340, 1345 (S.D. Fla. 2014). Direct evidence of copying is rare and "includes admissions that the work was reproduced or witness testimony indicating that the copying was observed or recorded." *BWP Media USA Inc. v. HipHopzilla, Inc.*, No. 1:14-cv-16, 2016 WL 4059682, at *2 (N.D. Ga. Mar. 1, 2016). There are no allegations of direct evidence in the SAC.

*2-3 (S.D. Fla. Nov. 30, 2012) (describing circumstances under which striking similarity is required). Plaintiff has not done so.

In the Motion, Plaintiff failed to even address access—that Defendants had "reasonable opportunity to view" the allegedly infringed upon works. [ECF 70 at 2-3]. This in itself is enough to deny Plaintiff's Motion. *Dillard v. CBS Studios, Inc.*, No. 8:25-cv-02091, 2025 WL 2881878, at *4 (C.D. Cal. Sept. 29, 2025). Regardless, the SAC's allegations are woefully insufficient to establish access to any of the works at issue: *Dealing with a Chronic Illness: Vestibular Neuritis* ("*Dealing*"), *Fallen from Grace* ("*Fallen*"), *Songs of the Unsung*, and "Noah." [SAC ¶¶ 4, 9-10]. To show access a plaintiff must establish "either that the infringed work has been widely disseminated, or that it is reasonable to infer from a particular chain of events that the defendant gained access to the copyrighted work." *Lassin v. Island Def Jam Music Grp.*, No. 04-cv-22320, 2005 WL 5632056, at *5 (S.D. Fla. Aug. 9, 2005). "Access may not be inferred through mere speculation or conjecture." *Herzog v. Castle Rock Ent.*, 193 F.3d 1241, 1250 (11th Cir. 1999) (quoting 4 Nimmer on Copyrights, § 13.02[A]).

The SAC claims in conclusory fashion that Plaintiff's works were "widely disseminated and reasonably available to Defendants through multiple channels" [SAC ¶ 11], but Plaintiff fails to identify those "channels" or when or to what extent her works were available. For one of Plaintiff's works, *Songs of the Unsung*, Plaintiff alleges that it has "globally" sold "approximately 300 copies" and was "available on Amazon and Thriftbooks," [SAC ¶¶ 13 36]. Distribution of 300 copies globally, on two websites, does not support access. *See Art Attacks Ink, LLC v. MGA Ent. Inc.*, 581 F.3d 1138, 1144 (9th Cir. 2009) (affirming that sales of 2,000 t-shirts per year with allegedly infringed design and posting on the internet were insufficient to show widespread dissemination); *White v. Alcon Film Fund, LLC*, 52 F. Supp. 3d 1308, 1318 (N.D. Ga. 2014)

(finding public dissemination of approximately 15,000 copies of a copyrighted book over a five-year period insufficient to establish access).

As to *Dealing* and *Fallen*, (the only books on which the counts are based[6]), Plaintiff provides no facts as to how many copies were sold, which online websites sold her works, or for how long her works were offered for sale, only that *Fallen* was published in 2018 and again in 2019, was "made available" for purchase, and "reach[ed] international markets." [SAC ¶¶ 13, 21]. Plaintiff also includes generic allegations that she "pitched her work to literary agencies" "posted Works on social media" including her Facebook profile with "over 9,000 followers," "sent poems to poetry contests online" and that her works "garnered international attention" and "were continuously available online." [SAC ¶¶ 13, 14, 16, 33, 36, 163]. None of these bald assertions support any form of broad distribution, and in fact, currently, none of Plaintiff's books are available to view or purchase online on any website, including Amazon, Barnes & Noble, Books-A-Million, Indie Bound, or Thrift Books. All of these websites state that Plaintiff's books are either "out of stock" or "out of print."[7] Finally, as to "Noah," Plaintiff states she has "proof of when it was first published on social media and YouTube" [SAC ¶ 10], but does not provide that purported "proof" or any other details relevant to the access inquiry. Plaintiff has provided no support for even an inference that Defendants saw the allegedly infringed works.

---

[6] After discussing a line from Plaintiff's poem "Noah," upon which Count VI is based, Plaintiff adds extraneously that the cover of her book *Songs of the Unsung* included an image of a quill pen and music notes. [SAC ¶ 116].

[7] *See, e.g.*, *Songs of the Unsung: How Your Stories and Poetry Become the Folklore of a Select Luminary*, Amazon, https://www.amazon.com/dp/B08N3KQC8S (last visited Nov. 26, 2025) ("Out of Print"). And, in the case of Plaintiff's work, *Dealing with a Chronic Illness: Vestibular Neuritis*, the title is not recognized by these websites. *See, e.g.*, No results for Dealing with a Chronic Illness: Vestibular Neuritis in Books, Amazon, https://www.amazon.com/s?k=Dealing+with+a+Chronic+Illness%3A+Vestibular+Neuritis (last visited Nov. 26, 2025).

Lastly, Plaintiff cannot establish unlawful copying because the works are nowhere near substantially or strikingly similar. To establish substantial similarity, once any generalized, unprotected metaphors, messages, contexts, or ideas are disregarded, the infringement analysis examines whether a reasonable jury would find the protected expression in the two works is substantially similar. *See Vallejo*, 833 F. App'x at 257; *Herzog*, 193 F.3d at 1257. As explained above, there is nothing left to Plaintiff's allegedly infringed materials once the generic, unprotectable elements are removed. *See supra* Section I.A. Further, because Plaintiff has failed to plausibly allege access, she can only demonstrate unlawful copying by alleging "striking similarity between the original work and the alleged infringing work." *Davis*, 2012 WL 12868729, at *3. Striking similarity is a higher standard and exists where the similarities are "so striking that the possibilities of independent creation, coincidence and prior common source are, as a practical matter, precluded." *Corwin v. Walt Disney World Co.*, 475 F.3d 1239, 1253 (11th Cir. 2007) (citation omitted). On this Motion, Plaintiff does not even argue striking similarity, and she has therefore failed to show a likelihood of success on that necessary element. *Davis*, 2012 WL 12868729, at *3.

Even if Plaintiff could establish access (she cannot), Plaintiff's substantial similarity arguments are, unsurprisingly, baseless and conclusory. The *only* thing that Plaintiff relies on to claim that she is likely to prove substantial similarity is an unverified, AI-generated "Textual Similarity Analysis" ("AI Exhibit").[8] The output of an unidentified AI tool, with no information

---

[8] Plaintiff asserts the AI Exhibits is admissible under Federal Rule of Evidence 1006. [ECF 70 at 2-3]. Not so. FRE 1006 allows a court to admit as evidence "a summary, chart, or calculation offered *to prove the content of voluminous admissible writings* . . . that cannot be conveniently examined in court." Fed. R. Evid. 1006(a) (emphasis added). The AI Exhibit does no such thing. Rather, Plaintiff uses it to generate legal conclusions, not simply to summarize content, and, in any event, the underlying content—short songs and poems—is not too voluminous for the Court to review.

about the prompts or data that Plaintiff employed, is not "evidence" of anything and cannot be relied upon. Indeed, courts and commentators are understandably critical of AI-based legal analyses—AI tools are known to hallucinate legal research and citations, show a bias for the requester,[9] and have been criticized as wasteful because the tools demand that the opposing party investigate any possible deception. *ByoPlanet Int'l, LLC v. Johansson*, 792 F. Supp. 3d 1341, 1347 (S.D. Fla. 2025) ("AI regularly 'hallucinates'"); *United States v. McGee*, No. 1:24-cr-112, 2025 WL 2888065, at *3 (S.D. Ala. Oct. 10, 2025) (collecting cases); *Green v. Shirley*, No. 1:23-cv-505 2025 WL 2808434, at *11 (E.D. Cal. Oct. 2, 2025) (finding AI-generated evidence inadmissible); *Johnson v. State*, No. c-15-cr-23-306, 2025 WL 2237582, at *6 (Md. Ct. Spec. App. Aug. 6, 2025) ("AI could hallucinate evidence, as it does text and citations when it can't find an answer.").

Here, Plaintiff contends that the AI Exhibit establishes substantial similarity for certain counts, which were rated according to undefined "signal strengths" across various categories. [ECF 70 at 2-3]. However, the AI Exhibit's results contain no information about which of Plaintiff's poems were used, the poem's verses, the song compared, or the song's lyrics to verify the AI Exhibit's outputs. [ECF 70 at 3, 70-1]. It is inherently unreliable. Indeed, the AI Exhibit (and the Motion) includes an analysis for Count XIII, when the SAC only contains twelve counts. [SAC at 38-40 (listing twelfth and final Count)]. Defendants have no way to know what the AI Exhibit was actually comparing or what it was prompted to say. And, in any event, it is worth noting that the AI Exhibit confirms that several of Plaintiff's counts are "based on widely used tropes, making them less persuasive as protectable expression." [ECF 70-1, Exhibit A, at 1-2].

_____

[9] *AI Sycophancy: Impacts, Harms & Questions*, Georgetown Law (Aug. 11, 2025), https://www.law.georgetown.edu/tech-institute/insights/ai-sycophancy-impacts-harms-questions/ (describing AI sycophancy—a pattern where an AI model "single-mindedly pursue[s] human approval").

Plaintiff provides no other evidence or analysis for her claim of substantial similarity.[10] Her argument on this element also fails.

***

In sum, Plaintiff has not and cannot carry her burden of demonstrating that she is likely to succeed on the merits of her copyright infringement claims. The Motion should be denied on that basis alone. *See Wood*, 142 F.4th at 1289.

## II.      Plaintiff Has Not Shown Any Potential for Irreparable Harm Because Any Purported Harm is Highly Speculative and Compensable.

Plaintiff also fails to carry her burden of demonstrating that she will suffer irreparable harm if an injunction does not issue. The irreparable harm requirement is "indispensable" and requires that Plaintiff "actually show based on the facts of this case that irreparable harm was 'likely,' not merely possible." *Hoop Culture*, 648 F. App'x at 985 (quoting *Winter*, 555 U.S. at 20-22). Plaintiff has made no showing that any alleged harm would exist at all, let alone be irreparable, nor that injunctive relief is even the proper remedy for this type of copyright infringement claim (it is not). Her failure to make a showing on any of these points is also fatal to the preliminary injunction request. *Id.* at 984.

### A.  Plaintiff's Speculative Alleged Harms Cannot Support Injunctive Relief.

A showing of irreparable injury "must be neither remote nor speculative, but actual and imminent." *Siegel*, 234 F.3d at 1176 (citation omitted). Plaintiff's Motion alleges irreparable harm from the dilution of her creative control of basic themes and words, and dilution of "market position" by the continued sale and performance of the allegedly infringing works. [ECF 70 at 4]. In support, Plaintiff asserts that "Courts recognize that ongoing distribution of infringing works

---

[10] Given the obvious shortcomings in Plaintiff's substantial similarity argument, Defendants do not go through every single count to further show a lack of substantial similarity. Defendants will make this showing in their forthcoming motion to dismiss.

create irreparable harm." *Id.* (citing *Harper & Row Publishers, Inc. v. Nation Enters.*, 471 U.S. 539 (1985); *Bridgeport Music, Inc. v. Dimension Films*, 410 F.3d 792 (6th Cir. 2005)). However, neither of the above cases involve a request for preliminary injunctive relief, much less irreparable harm. *Harper & Row Publishers, Inc.*, 471 U.S. at 569 (reversing dismissal of copyright claims where publication was found not to be fair use); *Bridgeport Music, Inc.*, 410 F.3d 792 (affirming in part and reversing in part summary judgment on copyright claim). On the contrary, courts do not find irreparable harm where plaintiff cannot establish a likelihood of success on the merits. *Johnson & Johnson Vision Care, Inc. v. 1-800 Contacts, Inc.,* 299 F.3d 1242, 1247 (11th Cir. 2002). In these instances, the harm is speculative, *not* irreparable. *Siegel*, 234 F.3d at 1176; *Universal City Studios, Inc. v. Casey & Casey, Inc.*, 622 F. Supp. 201, 206 (S.D. Fla. 1985), *aff'd sub nom.*, *Universal Studios v. Casey & Casey*, 792 F.2d 1125 (11th Cir. 1986). Given that Plaintiff has utterly failed to show likelihood of success on the merits, *see supra* Section I, she cannot show irreparable harm.

Plaintiff's claim of irreparable harm from dilution of her "market position" is equally unavailing. [ECF 70 at 4]. While loss of a party's market share for goods can weigh in favor of finding irreparable harm in certain circumstances, *Hoop Culture*, 648 F. App'x at 984, there can be no marketplace harm where there is no existing market. *Id.* (affirming denial of preliminary injunction where plaintiff failed to show lost market share because plaintiff offered "no testimony" that customers who purchased the allegedly infringing clothing from defendant retailer would have purchased shirts from plaintiff); *Suntrust*, 268 F.3d at 1276 (explaining that the copyright holder plaintiff failed to show how the publication of a parody that "[has] little to no appeal to the fans of [the novel] who comprise the logical market for its authorized derivative works, will cause it irreparable injury"). Here, Plaintiff has not identified any market for her books. Indeed, none of

her books are currently publicly available, *see supra* at 9-10 & n.7, and Plaintiff only refers to past sales of "300 copies globally" for one title. [SAC ¶ 13]. Nor has Plaintiff even argued, let alone supported, the notion that her poems and Defendants' songs are in the same market. There is no credible claim of irreparable harm to Plaintiff from any purported "market position" here.

Moreover, Plaintiff's requested relief primarily seeks to halt the forthcoming release of "The End of an Era," a docuseries soon set to be released on a streaming platform. [ECF 70 at 1, 5]. She has claimed, without any evidence, that the disputed works will be included in the docuseries and assumes that they would feature the disputed lyrical elements that Plaintiff claims were copied. [ECF 70 at 1 (contending the docuseries "will broadcast performances of the infringing works to millions of viewers worldwide")]. Plaintiff cites to absolutely nothing to support those assumptions. Nor has Plaintiff even tried to establish that any of the Defendants in this action has the right to control distribution of the docuseries. Plaintiff's request for highly speculative "harm" should be rejected.

**B. Plaintiff's Alleged Harms Are Monetarily Compensable, Not Irreparable.**

Additionally, Plaintiff contends that her claims are irreparable because "[d]amages cannot compensate for the loss of control over Plaintiff's copyrighted works or the cultural impact of their unauthorized use." [ECF 70 at 4]. Again, Plaintiff is wrong, and injunctive relief is not proper for this claim. *Suntrust*, 268 F.3d at 1276; *Future Tech Int'l, Inc. v. Tae Il Media, Ltd.*, 944 F. Supp. 1538, 1553 (S.D. Fla. 1996) ("The possibility of adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation weighs heavily against a claim of irreparable harm." (citation omitted)).

In the incredibly unlikely event that Plaintiff could ever prevail on her baseless claims, monetary damages would be sufficient to address any purported harms. Courts typically find just that in claims for copyright infringement. *See, e.g.*, *Caracol Television, S.A. v. Telemundo*

*Television Studios, LLC.*, No. 18-cv-23443, 2018 WL 6727305, at *3 (S.D. Fla. Dec. 20, 2018) (denying preliminary injunctive relief where purported harms from copyright infringement in television entertainment could be remedied through damages considering "the metrics . . . such as revenue streams, ratings, and profit margins"); *Universal City Studios, Inc.*, 622 F. Supp. at 205-06 (denying preliminary injunction for purported trademark and copyright infringement, finding harm was monetarily compensable); *Concord Music Grp., Inc. v. Anthropic PBC*, 772 F. Supp. 3d 1131, 1140 (N.D. Cal. 2025) (similar). So too here.

Plaintiff has failed to show that she could or would suffer any cognizable harm, let alone irreparable harm, if a preliminary injunction does not issue. Further, even if harm would be caused (it would not), such harm would be compensable and not appropriate for injunctive intervention. The Motion should be denied. *Hoop Culture*, 648 F. App'x at 984-86.

### III.   The Balance of Hardships Weighs in Favor of Defendants.

To the extent that the remaining preliminary injunction factors even need to be addressed, the balance of hardships factor decidedly weighs in favor of Defendants. In evaluating the balance of hardships, the Court must balance the competing interests of the parties. *See, e.g.*, *Universal City Studios, Inc.*, 622 F. Supp. at 206 (balancing plaintiff's threatened injury against the harm the injunction may do to the defendant); *Suntrust*, 268 F.3d at 1276 (balancing a copyright owner's interest against the public interest in promoting First Amendment values and declining preliminary relief). Here, those interests weigh heavily in favor of denying the requested injunction.

First, Plaintiff's requested relief would be antithetical to preserving the status quo, which is the "chief function" of a preliminary injunction. *Northeastern Fla. Chapter of Ass'n of Gen. Contractors of Am. v. City of Jacksonville*, 896 F.2d 1283, 1284 (11th Cir. 1990). Far from maintaining the status quo, the relief Plaintiff seeks would create an absurd result: it would disrupt the status quo by awarding Plaintiff—who has been hawking the same baseless and harassing

claims for years even after this Court previously dismissed them with prejudice—censorship rights over Defendants' works, enjoyed by millions worldwide, so that Plaintiff can (as is currently the case) not even offer her poems for sale. Silencing Defendants' valid free speech in the interest of allowing Plaintiff to own basic phrases and themes would be a nonsensical result in any event, and even more so where Plaintiff isn't even using them. *See Suntrust*, 268 F.3d at 1276.

Second, similarly, contrary to Plaintiff's claim of irreparable harm, it would be Defendants who would suffer irreparable injury if Plaintiff's requested relief was granted. Specifically, enjoining the long-standing, uninterrupted sale and distribution of Artist's songs and/or the distribution of the widely anticipated and imminent release of the docuseries (again assuming Defendants had any ability to do so) would result in extreme disruption to Defendants' businesses and daily lives. *Benisek v. Lamone*, 585 U.S. 155, 161 (2018) (explaining the purpose of a preliminary injunction is to merely preserve the relative positions of the parties and an injunction causing a needlessly chaotic effect disrupts this purpose); *Universal City Studios, Inc.*, 622 F. Supp. 201 at 206 (finding that defendants, not the moving plaintiff, would suffer irreparable harm if preliminary injunction were granted because of anticipated sales over the approaching holidays); *Enchant Christmas Light Maze & Market Ltd. v. Glowco, LLC*, No. 3:19-cv-966, 2019 WL 5964531, at *7 (M.D. Tenn. Nov. 13, 2019) (similar, regarding holiday attraction that was imminently opening). The harm would be particularly irreparable to Defendants' businesses, including current and future collaborations in the music and film industries, if large projects (and the contractual obligations related to the same) could be upended any time someone makes a meritless infringement claim. Plaintiffs' harassing attempt to ignore reality by claiming that any "financial loss or contractual disruption" to Defendants is outweighed by her desire to have the

17

"right to control . . . creative works"[11] [ECF 70 at 5], is absurd and plainly designed to garner media attention. Plaintiff has flatly failed to carry her burden to show that the balance of hardships falls in her favor.

## IV.    Injunctive Relief Would Not Be in the Public Interest.

Lastly, the public interest factor similarly weighs heavily in Defendants' favor.  Plaintiff is correct that a court may generally find the public interest is served by protecting the sanctity of intellectual property rights of a legitimate copyright owner and by protecting customers from being misled or confused in the marketplace. *See Hong Kong Leyuzhen Tech. Co. v. Individuals*, *Corps., LLCs*, No. 25-cv-22977, 2025 WL 2840724, at *2-3 (S.D. Fla. Sept. 5, 2025). However, no such public interest is served where the plaintiff fails to demonstrate any harm to the public, *e.g.*, no consumer confusion, *TailGate Beer, LLC v. Blvd. Brewing Co.*, No. 3:18-cv-563, 2019 WL 5208186, at *17 (M.D. Tenn. Oct. 16, 2019), or where plaintiff fails to demonstrate a likelihood of success on the merits. *Green v. U.S. DOJ*, No. 16-cv-1492, 2021 WL 11637039, at *12 (D.D.C. July 15, 2021) (finding public interest weighs in favor of defendants where movant fails to establish likelihood of success). On the contrary, the intellectual property interests at risk and under attack in this litigation are Defendants', not Plaintiff's. The public interest weighs heavily in favor of protecting against highly valuable intellectual property being locked away and restricted from public enjoyment because of baseless legal claims.

It is further in the public's interest to avoid frivolous litigation that needlessly wastes both the court's and the public's time and resources. *Ho v. Warren*, No. 8:21-cv-2621, 2021 WL

---

[11] Plaintiff cites the out-of-circuit case *Capitol Records, LLC v. ReDigi Inc.*, 934 F. Supp. 2d 640 (S.D.N.Y. 2013) for the proposition that "Courts often weigh commercial inconvenience against the right to control creative works" (Motion at 5), but that case did not discuss the preliminary injunction factors (and indeed, the court had previously denied plaintiff's request for a preliminary injunction). *Capitol Records*, 934 F. Supp. 2d at 647.

5494374, at *3 (M.D. Fla. Nov. 23, 2021) ("If judges allow the court system to be weaponized by any party for improper purposes, the public is not well-served."). In this Action, Defendants have been forced to re-litigate Plaintiff's baseless copyright infringement claims that have already been dismissed once, with prejudice, by this Court. *See Marasco I*, Order.  In doing so, Defendants have been subjected to, and forced to spend time, energy and financial resources on Plaintiff's continued unsupported and random filings. Certainly, granting a preliminary injunction in these circumstances would harm the public interest by making high-value projects subject to the whims of vexatious litigants bringing meritless and harassing claims attempting to damage the reputation and careers of Defendants for a pay day. Such unsupported requests for preliminary injunctions waste the precious resources of the courts, and parties, and unfairly increase the costs and stakes of litigation.[12] *Warren*, 2021 WL 5494374, at *3 (explaining that in unmeritorious *pro se* cases, parties defending themselves are "penalized because they are required to expend their own time and resources they can never get back even if the case is eventually dismissed"). Thus, the public interest factor weighs heavily in Defendants' favor, and Plaintiff has failed to meet her burden to show otherwise.

## **CONCLUSION**

Plaintiff has utterly failed at every step to carry her burden to support the issuance of a preliminary injunction. The Motion for Preliminary Injunction should be denied.

---

[12] Regardless of Plaintiff's pro se status, the frivolous request for a preliminary injunction has needlessly multiplied these proceedings and could subject her to sanctions. *See, e.g.*, Fed. R. Civ. P. 11; 28 U.S.C. § 1927.

DATED: December 1, 2025

Respectfully Submitted,

By: */s/ James Douglas Baldridge*
James Douglas Baldridge
(Florida Bar No. 708070)
Katherine Wright Morrone
(admitted *pro hac vice*)
600 Massachusetts Ave, NW
Washington, D.C. 20001
Tel: (202) 344-4000
Fax: (202) 344-8300
jbaldridge@venable.com
kwmorrone@venable.com

*Attorneys for Defendants Universal
Music Group, Inc., Republic Records,
and Taylor Swift*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on December 1, 2025, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.

*/s/ James Douglas Baldridge*
James Douglas Baldridge
