# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA
### FORT PIERCE DIVISION

Case No. 2:25-cv-14067-CANNON

KIMBERLY MARASCO,

     *Plaintiff,*

v.

TAYLOR SWIFT; UNIVERSAL MUSIC
GROUP, INC.; and REPUBLIC RECORDS,

     *Defendants.*

---

## DEFENDANTS' MOTION TO DISMISS SECOND AMENDED COMPLAINT AND INCORPORATED MEMORANDUM OF LAW

Pursuant to Rules 12(b)(2) and 12(b)(6) of the Federal Rules of Civil Procedure, Defendants Universal Music Group, Inc. ("UMGI"), Republic Records ("Republic"), and Taylor Swift ("Artist") (collectively, "Defendants") move this Court for an Order dismissing with prejudice Plaintiff Kimberly Marasco's ("Plaintiff's") Second Amended Complaint [ECF 65] ("SAC") alleging copyright infringement. In support of the Motion, Defendants state as follows.

## **INTRODUCTION**

This is Plaintiff's second frivolous and harassing lawsuit against Artist asserting copyright infringement claims. Despite having no conceivable case against Artist, and after being expressly informed by this Court that her allegedly infringed "expressions" are not protectable under copyright law, Plaintiff filed yet another meritless lawsuit and expanded her groundless campaign to include Defendants UMGI and Republic. Plaintiff's claims are, as in her last lawsuit, absurd and legally baseless. For instance, the concept of betrayal or the words "fire" or "love" cannot be owned by one person, as basic themes or words are not protectable by copyright law. Plaintiff has wasted the time and resources of Artist, the other Defendants, and this Court for long enough. This case is legally and factually meritless and should, again, be dismissed with prejudice.

First, the SAC is an impermissible shotgun pleading against the Defendants collectively, replete with conclusory and immaterial facts not identified in separate claims as required. Second, as this Court already determined in Plaintiff's prior case, *Marasco v. Taylor Swift Prods., Inc.*, No. 2:24-cv-14153-AMC ("*Marasco I*"), the allegedly infringed upon elements in Plaintiff's poems— basic ideas, themes, metaphors, words, and short phrases—are not protected elements of expression in *any* scenario and therefore cannot be infringed upon. Third, even if these elements were protectable expression (they are not), Plaintiff has failed to plausibly plead unlawful copying—failing to show either access or any level of substantial or striking similarity between

the works. Fourth, Plaintiff has utterly failed to adequately allege any pattern, contributory, or vicarious theories of copyright infringement. Fifth, Plaintiff has not met her burden to establish personal jurisdiction over UMGI. Sixth, most of the claims here are collaterally estopped by the Court's order dismissing with prejudice Plaintiff's similar claims in *Marasco I*. [*Marasco I*, ECF 79 (the "Order")]. These numerous flaws in the SAC are incurable and require dismissal with prejudice. Plaintiff's frivolous and harassing claims should be dismissed once and for all.

## FACTUAL BACKGROUND AND ALLEGATIONS[1]

Plaintiff is the alleged author and copyright owner of two books, *Dealing with a Chronic Illness: Vestibular Neuritis* ("*Dealing*") and *Fallen from Grace* ("*Fallen*"). Plaintiff inconsistently alleges that *Dealing* was later retitled to *Fallen from Grace*, which has since been retitled to *Songs of the Unsung*. [SAC ¶¶ 4, 9; *Marasco I*, ECF 1-1 at 1 (stating that the title for *Dealing* was later changed to *Songs of the Unsung*), ECF No. 26 at 3 (stating title for *Fallen* was later changed to *Songs of the Unsung*)]. In addition, Plaintiff is the alleged author and copyright owner of a poem, "Noah." [SAC ¶10].

Plaintiff filed for and obtained a copyright registration for her poetry book *Dealing* from the U.S. Copyright Office allegedly effective July 11, 2017,under registration number TXu2061218.[2] [SAC ¶¶ 9, 43, Ex. A-1]. Plaintiff filed for and obtained a copyright registration for her poetry book *Fallen* from the U.S. Copyright Office allegedly effective May 27, 2020, under registration number TXu2200550. [SAC ¶¶ 9, 43, Ex. A-2]. Plaintiff did not include any similar

---

[1] For purposes of this Motion only, Defendants accept the non-conclusory, factual allegations as pled by Plaintiff as true. For the avoidance of doubt, Defendants contest the allegations in the SAC.
[2] Plaintiff alleges *Dealing* has the registration number TXu2200550 and that *Fallen* has the registration number TXu2061218 [SAC ¶ 9], but the reverse is the case according to the certificates of registration attached to the SAC as Exhibits A-1 and A-2.

copyright registration information for *Songs of the Unsung*.[3] Plaintiff alleges *Dealing* was published by Outskirts Press in 2018 and that *Fallen* was published in 2018 by Outskirts Press and re-published in 2019 by Ukiyoto Publishing. [SAC ¶¶ 13, 43]. None of Plaintiff's books are currently being marketed and Plaintiff only refers to past sales of "300 copies globally" for one title. [SAC ¶¶ 13, 38]. Plaintiff also filed for and obtained a copyright registration for her poem, "Noah," from the U.S. Copyright Office allegedly effective August 11, 2024, under the registration number TX9417589. [SAC ¶ 10, Ex. A-3].

In what is now her second baseless litigation against Artist and related parties, Plaintiff alleges, without support, that Defendants copied works in *Dealing*, *Fallen*, *Songs of the Unsung*, and "Noah." Plaintiff alleges that Defendants all "copied original, protectable expression from Plaintiff's works and incorporated it into their songs, lyrics, and audiovisual content." [SAC ¶ 46]. Regarding UMGI and Republic specifically, Plaintiff alleges that they "knowingly induced, caused, and materially contributed to [Artist's] infringement." [SAC ¶ 184].

Plaintiff alleges twelve counts of purported copyright infringement.[4] [SAC ¶ 31]. The counts include allegations of copying of (i) ubiquitous metaphors and themes found throughout the world in countless works of art and human experiences, including ideas about a "female worker navigating a patriarchal corporate system," a woman being "gaslighted," and "being 'submerged'

---

[3] Notably, the Certificates of Registration are only for *Dealing with a Chronic Illness: Vestibular Neuritis* and *Fallen from Grace*, not *Songs of the Unsung*. Ex. A-1, Ex. A-2. Best practice requires Plaintiff to file a supplementary application to account for the changed title. U.S. COPYRIGHT OFF., *Compendium of U.S. Copyright Off. Pracs.* § 1802.6(c) (3d ed. 2021).

[4] Plaintiff identifies additional instances of alleged infringement in Exhibits to the SAC [ECFs 65-3, 65-4, 65-5, 65-6]; however, because she does not address them anywhere in the separate counts of the SAC, Defendants do not address them here. [*See Marasco I*, ECF No. 20 at 7 ("Plaintiff must clearly set out her claims by alleging each violation in individual counts.")]. In any event, those purported additional instances of infringement suffer from the same deficiencies identified throughout this Motion.

under water" [SAC ¶¶ 57-58, 68, 86]; and/or (ii) individual words or short phrases (which are not afforded copyright protection in any circumstance) plucked from random spots within the works, such as: "love," "tears," "running," "laughter," "time," "rain," "sky," "my waves," "fuse," "cruel," "mean," "ingenue," "fire," "desire," "battles," "gold," "invisible," "flesh and blood," "it's time to go," and "anthology." [SAC ¶¶ 54-55, 73-74, 80-81, 84-85, 95-97, 112-113, 118-19, 124-27, 131-32, 135, 137-38, 142-45, 148, 151-52]. Additionally, while Plaintiff alleges that Defendants' works are similar to Plaintiff's works because they allegedly share the same unprotected ideas, individual words, or short phrases, a comparison of the Works shows there are ***no*** similarities between any of them and Plaintiff's poems.[5] Full lyrics of each of the allegedly infringing songs identified in the SAC are included as **Exhibit A**.[6]

## LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), Plaintiff "must plead sufficient facts to show entitlement to relief and must plead 'more than labels and conclusions' [as] a formulaic recitation of the elements of a cause of action will not do.'" *Sieger Suarez Architectural P'ship, Inc. v. Arquitectonica Int'l Corp.*, 998 F. Supp. 2d 1340, 1345 (S.D. Fla. 2014) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "All litigants, *pro se* or not, must comply with the Federal Rules of Civil Procedure." *Jackson v. JPay Corp.*, 2020 WL 5264514, at *1 (S.D. Fla. July 27, 2020), *aff'd*, 851 F. App'x 171 (11th Cir. 2021) (citation omitted). Although *pro se* complaints

---

[5] Plaintiff includes a nearly identical "AI Textual Analysis" that was attached to her Motion for Preliminary Injunction. *Compare* ECF 65-2, *with* ECF 70-1. As explained in the Opposition to that motion, the AI exhibit should be disregarded as it is unsound and unreliable. [ECF 72 at 11-12 (explaining that Plaintiff provided no information about the relevant inputs, prompts, or data used to create the AI exhibit and the documented concerns about AI hallucinations and requester bias)].

[6] "Courts may consider materials that are incorporated by reference into a complaint without converting a motion to dismiss to a motion for summary judgment if the document is (1) central to plaintiff's claim and (2) undisputed." *Hubbard v. BankAtlantic Bancorp, Inc.*, 625 F. Supp. 2d 1267, 1279 (S.D. Fla. 2008); *Reeves v. United States*, 526 F. Supp. 3d 1226, 1232 (S.D. Fla. 2021).

are liberally construed, "the court does not have license to serve as de facto counsel for a party or to rewrite an otherwise deficient pleading in order to sustain an action." *Id.*

Further, under Rule 8(a)(2), a complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Rule 10(b) requires a party to "state its claims . . . in numbered paragraphs, each limited as far as practicable to a single set of circumstances." Fed. R. Civ. P. 10(b). A complaint that violates Rule 8(a)(2) and/or Rule 10(b) is known as a "shotgun pleading," which "fail[s] . . . to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests." *Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1321-23 (11th Cir. 2015). Dismissal of a shotgun pleading is appropriate under Rule 12. *Walters v. Sheldon*, 2023 WL 5670383, at *3 (S.D. Fla. Sept. 1, 2023) ("Shotgun pleadings are not allowed—even from *pro se* plaintiffs.").

Rule 12(b)(2) requires dismissal of a claim if the Court lacks personal jurisdiction over the defendant. Fed. R. Civ. P. 12(b)(2). The burden of establishing personal jurisdiction is squarely on Plaintiff. *Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1350 (11th Cir. 2013). Plaintiff's "*pro se* status does not relieve h[er] of h[er] obligation to meet the jurisdictional pleading burdens." *Guthrie v. U.S. Gov't*, 2014 WL 12600153, at *1 (S.D. Fla. Jan. 8, 2014).

## ARGUMENT

## I. PLAINTIFF'S SAC IS FATALLY FLAWED IN SEVERAL WAYS AND FAILS TO STATE A CLAIM PURSUANT TO RULE 12(b)(6).

Plaintiff has failed to state a claim upon which relief can be granted as the SAC contains several, distinct incurable deficiencies. The SAC should be dismissed in its entirety with prejudice.

### A. Plaintiff's SAC is an Impermissible Shotgun Pleading.

First, Plaintiff's shotgun SAC violates Rules 8(a)(2) and 10(b), and thus, dismissal is required. Because shotgun pleadings "are flatly forbidden by the spirit, if not the letter, of [the

federal] rules" and "waste scarce judicial resources, inexorably broaden the scope of discovery, wreak havoc on appellate court dockets, and undermine the public's respect for the courts," this Circuit has "little tolerance for them." *Barmapov v. Amuial*, 986 F.3d 1321, 1324 (11th Cir. 2021).

There are four categories of shotgun pleadings, two of which are squarely at issue here: a complaint that is replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action; and a complaint that asserts multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against. *Id.* at 1325. Plaintiff's SAC is replete with conclusory legal arguments, immaterial facts, and duplicative sections [*see, e.g.*, SAC ¶¶ 32, 38, 88-90, 99, 154, 156-62, 163-75], which are improper for a pleading that should be "short and plain." *Abbot v. Austal, USA, LLC*, 2022 WL 22843330, at *3 (S.D. Ala. Sept. 22, 2022) (deeming proposed complaint a "shotgun pleading due to its length, rambling nature, numerous factual allegations which are in actuality conclusory arguments"); *Cosby v. First Horizon (Bank) Natl. Corp.*, 2013 WL 12100123, *5 (N.D. Ga. Aug. 29, 2013) ("[a]n excess of allegations . . . may warrant dismissal of a complaint as a shotgun pleading.").

Additionally, Plaintiff rattles off numerous allegations of several different songs infringing upon several different poems in a single count, "fail[ing] to articulate claims with sufficient clarity to allow [] Defendant to frame a responsive pleading." *Murray v. Archer*, 2022 WL 6569711, at *6 (S.D. Fla. Aug. 19, 2022), *R&R adopted*, 2022 WL 3973990 (Sept. 1, 2022); [*see, e.g.*, SAC ¶¶ 60-70 (alleging in Count II that three of Defendants' works infringed one of Plaintiff's); *id.* ¶¶ 130-35 (alleging in Count IX that one of Defendants' works infringed on two of Plaintiff's)]. Further, Plaintiff repeatedly refers to the Defendants—Artist, UMGI, and Republic—collectively in her allegations of infringement without specifying which Defendant(s) are responsible, despite

the distinct roles they occupy in the music recording industry. [*See, e.g.*, SAC ¶ 3 ("Defendants promote and produce events in this District"); *id.* ¶ 18 ("Defendants continue to exploit the infringing works, including by performing them in live concerts and distributing them"). Defendants and the Court are "under no obligation to parse all of this out to identify what specifically Plaintiff is claiming." *Murray*, 2022 WL 6569711, at *6. Plaintiff's shotgun SAC should be dismissed. *See Peele v. Day*, 2023 WL 2866437, at *2 (S.D. Fla. Mar. 8, 2023).

**B.  The Allegedly Infringed Elements are Not Protected Elements of Expression.**

To the extent Plaintiff's shotgun pleading can be evaluated, the elements Plaintiff claims are infringed upon are not protected elements of expression. Her copyright infringement claims therefore fail for this independent reason.

An actionable copyright infringement claim must establish that Defendant "copied constituent elements of the work that are original." *Sieger Suarez*, 998 F. Supp. 2d at 1345 (citing *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991))."Copyright protection does not automatically extend to every component of a copyrighted work, and, sometimes, elements of a work that a plaintiff seeks to protect are objectively not copyrightable." *Brandon v. New Power Generation*, 2017 WL 1437560, at *4 (S.D. Fla. Apr. 3, 2017). Rather, a "copyright is limited to those aspects of the work—termed 'expression'—that display the stamp of the author's originality." *Harper & Row Publishers, Inc. v. Nation Enters.*, 471 U.S. 539, 547 (1985).

Here, Plaintiff alleges several instances of purported copyright infringement of metaphors, ideas, or themes from her poems. For example, Plaintiff alleges that Artist unlawfully used Plaintiff's ideas about time, a false or betrayed love, a woman being "gaslighted," guilt, abandonment, and the concept of using a chair in a dance routine. [SAC ¶¶ 29, 52-154, 162, 180; ECF 65-5 at 6]. But "[i]n no case does copyright protection for an original work of authorship

extend to any **idea**, procedure, process, system, method of operation, **concept**, principle, or discovery, regardless of the form in which it is described, explained, illustrated, or embodied in such work." 17 U.S.C. § 102(b); 37 C.F.R. § 202.1(a). Specifically, noncopyrightable elements include **metaphors**, *Portionpac Chem. Corp. v. Sanitech Sys., Inc.*, 217 F. Supp. 2d 1238, 1246 (M.D. Fla. 2002), and **themes**, *Singleton v. Dean*, 611 F. App'x 671, 672 (11th Cir. 2015) (affirming dismissal because "alleged similarities either do not exist or concern broad ideas"); *Beal v. Paramount Pictures Corp.*, 20 F.3d 454, 460 (11th Cir. 1994) ("[I]deas and other general themes . . . are not susceptible to copyright protection."). Thus, allegations that Defendants have infringed upon general metaphors, themes, or ideas in Plaintiff's poems are wholly based on non-protectable elements of expression and are not actionable.

Plaintiff also alleges several instances of purported copyright infringement of short phrases or single lines in her poems. For example, Plaintiff alleges that Artist's songs are substantially similar because they use the same single words or short phrases in Plaintiff's poems, including: "love," "tears," "running," "time," "rain," "sky," "crazy," and short lines "caged me" and "It's time to go." [SAC ¶¶ 52-56; 60-66; 71-73, 80; 92-98; 117-20; 124-29; 145-47]. It is well-established that "[w]ords and short phrases" are not copyrightable and therefore, cannot be infringed upon. 37 C.F.R. § 202.1(a); *Apps v. Universal Music Grp.*, 763 F. App'x 599, 600 (9th Cir. 2019) (affirming lyric "I need to know now" insufficient to establish substantial similarity); *Vallejo v. Narcos Prods. LLC*, 833 F. App'x 250, 259 n.3 (11th Cir. 2020) (concluding even "almost identical" copying of "short phrases" cannot be protected because they "are not subject to copyright protection."); *Brandon*, 2017 WL 1437560, at *4 (dismissing claim and holding short phrases are "not copyrightable, and [are] not an appropriate basis for claiming 'substantial similarity' for the purposes of an infringement claim."). This Court expressly stated as much in

*Marasco I.* [Order at 7-8 ("These common words are not copyrightable.")].

In sum, none of Plaintiff's claims—based on metaphors, themes, ideas, short phrases or single words—contain *any* protected expression. This case should be dismissed with prejudice.

### C.  Plaintiff Has Failed to Plausibly Plead Unlawful Copying.

While the Court need not go further, Plaintiff has also failed to plausibly plead unlawful copying for any of the referenced works. To state a claim for copyright infringement, Plaintiff must plead copying of protected elements of expression in her works through direct or indirect evidence. *Sieger Suarez*, 998 F. Supp. 2d at 1345. There are no allegations of direct evidence of copying in the SAC, which is rare and "includes admissions that the work was reproduced or witness testimony indicating that the copying was observed or recorded." *BWP Media USA Inc. v. HipHopzilla, Inc.*, 2016 WL 4059682, at *2 (N.D. Ga. Mar. 1, 2016). Because there are no allegations of direct evidence of copying, Plaintiff "may establish copying by demonstrating that the defendant had access to plaintiff's work and that the works are "so substantially similar . . . that an average lay observer would recognize the alleged copy as having been appropriated from the original work." *Calhoun v. Lillenas Publ'g*, 298 F.3d 1228, 1232 (11th Cir. 2002) (involving *pro se* plaintiff) (citation omitted). Plaintiff has not and cannot make this showing.

#### 1.  Access

Access requires the defendant to have had a "reasonable opportunity to view" the allegedly infringed upon works. *Dixon v. Sony Corp. of Am.*, 2012 WL 1886550, at *2 (S.D. Fla. May 23, 2012); *Herzog v. Castle Rock Ent.*, 193 F.3d 1241, 1249 (11th Cir. 1999). A "bare possibility" of access is insufficient and it is well settled that "mere speculation or conjecture is not enough." *Brandon*, 2017 WL 1437560, at *7. A plaintiff may plead access alleging "either that the infringed work has been widely disseminated, or that it is reasonable to infer from a particular chain of

events that the defendant gained access to the copyrighted work." *Lassin v. Island Def Jam Music Grp.*, 2005 WL 5632056, at *5 (S.D. Fla. Aug. 9, 2005); *Dixon*, 2012 WL 1886550, at *2. Plaintiff has done neither here.

While Plaintiff claims in conclusory fashion that her works were "widely disseminated and reasonably available to Defendants through multiple channels" [SAC ¶ 11], Plaintiff fails to identify those "channels" or when or to what extent her works were available. For one of Plaintiff's works, *Songs of the Unsung*, Plaintiff alleges that it has "globally" sold "approximately 300 copies" and was "available on Amazon and Thriftbooks," [SAC ¶¶ 13 36]. As to *Dealing* and *Fallen*, (which are the only books listed in the counts[7]), Plaintiff provides no facts as to how many copies were sold, which online websites sold her works, or for how long her works were offered for sale, only that *Fallen* was published in 2018 and again in 2019, was "made available" for purchase, and "reach[ed] international markets." [SAC ¶¶ 13, 21]. Plaintiff also includes generic allegations that she "pitched her work to literary agencies" "posted Works on social media" including her Facebook profile with "9,000 followers," "sent poems to poetry contests online" and that her works "garnered international attention" and "were continuously available through online platforms." [SAC ¶¶ 13, 14, 16, 33, 36, 163]. Finally, as to "Noah," Plaintiff states she has "proof of when it was first published on social media and YouTube" [SAC ¶ 10], but does not provide that purported "proof" or information about distribution, sales, viewership since publication, etc.

Plaintiff's allegations are conclusory and woefully deficient to establish access. The mere fact that one of Plaintiff's works—which is not even the basis for the claims set out in the counts— sold 300 copies and that unspecified works were "continuously available" online and/or on

---

[7] Plaintiff includes a passing reference to a drawing on the cover of her work *Songs of the Unsung* [SAC ¶ 116], but Plaintiff does not allege in the counts that any of the poems forming the basis of her claims were contained in *Songs of the Unsung*. [*See generally* SAC ¶¶ 52-154].

Plaintiff's social media for an unknown period of time, does not plausibly allege that her books were widely disseminated to allow a reasonable inference that Defendants accessed the allegedly infringed works. *Clanton v. UMG Recordings, Inc.*, 556 F. Supp. 3d 322, 328 (S.D.N.Y. 2021) (dismissing copyright claim based on "vague and conclusory claim that the [song] ha[d] been widely shared and listened to online and on social media"); *White v. Alcon Film Fund, LLC*, 52 F. Supp. 3d 1308, 1318 (N.D. Ga. 2014) (finding public dissemination of around 15,000 copies of book over a five-year period insufficient to establish access). Nowhere does Plaintiff allege that her books *Fallen* and *Dealing* were distributed to the public[8] and available for purchase.[9] [*See generally* SAC]. Indeed, she admits that her works "are not presently being marketed." [SAC ¶ 38]. Further, Plaintiff does not allege that Defendants have seen her works or that Defendants work with or have connections to any of the literary agencies identified by Plaintiff to plausibly allege Defendants gained access to these works through some particular chain of events.

In sum, Plaintiff's conclusory allegations do not even rise to a *bare possibility* that Artist, UMGI, or Republic had access to her works. Without providing any of this basic information, Plaintiff has failed to allege access and the SAC should be dismissed with prejudice.

## 2. Substantial / Striking Similarity

To establish substantial similarity, Plaintiff "must satisfy a two-pronged test: (1) an

---

[8] Plaintiff alleges that *Fallen* was "showcased" to 25,000 bookstores and available "on Ingram for wholesale purchase by stores and retailers." [SAC ¶ 21]. Notably, Plaintiff does not allege that any stores or retailers ultimately selected the title to be available for purchase or public consumption.

[9] Currently, none of Plaintiff's books are available to view or purchase online on any website, including Amazon, Barnes & Noble, Books-A-Million, Indie Bound, or Thrift Books. All websites state Plaintiff's books are either "out of stock" or "out of print." *See, e.g.*, https://www.amazon.com/Songs-Unsung-Stories-Folklore-Luminary/dp/B08N3KQC8S; https://www.amazon.com/gp/product/1977201245. And, in the case of *Dealing with a Chronic Illness: Vestibular Neuritis*, the title is not recognized by these websites. *See, e.g.*, https://www.amazon.com/s?k=Dealing+with+a+Chronic+Illness%3A+Vestibular+Neuritis ("No results for Dealing with a Chronic Illness: Vestibular Neuritis in Books.").

extrinsic, objective test, and (2) an intrinsic or subjective test." *Herzog*, 193 F.3d at 1257. Under the first prong, the Court objectively determines whether a plaintiff seeks to protect only uncopyrightable elements. *Id.* If so, the claim fails and there is no need to move on. *Id.* If the Court evaluates the second prong, it determines whether a reasonable jury would find that the protected expressions in the works are substantially similar. *Id.* In other words, once any generalized, unprotected metaphors, messages, concepts, or ideas are disregarded, the infringement analysis examines whether the protected expression in the two works is substantially similar. *See Vallejo*, 833 F. App'x at 257. However, because Plaintiff has failed to plausibly allege access, she can only demonstrate unlawful copying by alleging "striking similarity between the original work and the alleged infringing work." *Davis v. Raymond*, 2012 WL 12868729, at *3 (S.D. Fla. Nov. 30, 2012). Striking similarity is a higher standard and exists where the similarities are "so striking that the possibilities of independent creation, coincidence and prior common source are, as a practical matter, precluded." *Corwin v. Walt Disney Co.*, 475 F.3d 1239, 1253 (11th Cir. 2007).

"Courts can examine copyright claims for substantial similarity as to a work's protected material at the motion to dismiss stage when a comparison of the undisputed works is possible." *Seven Oaks Millwork, Inc. v. Royal Foam US, LLC*, 483 F. Supp. 3d 1192, 1196 n.3 (M.D. Fla. 2020) (dismissing copyright infringement claims after conducting substantial similarity test where the undisputed works were attached to the briefing and were not highly technical); *Sieger Suarez*, 998 F. Supp. 2d at 1350 (analyzing a district court's consideration of substantial similarity at the motion to dismiss stage and concluding the Eleventh Circuit has deemed it appropriate).

Here, just as in *Marasco I*, Plaintiff fails to plausibly plead substantial, let alone striking, similarity for any of her counts. [SAC ¶¶ 31, 52-154; *see* Order at 9-11]. The purported similarities between the allegedly infringing works and Plaintiff's works are "inherently subjective and

unreliable" because they are "random" and far-fetched similarities "found in very dissimilar works." *Herzog*, 193 F.3d at 1257. Nevertheless, Defendants address each alleged similarity to thoroughly rebut Plaintiff's insufficient allegations of copyright infringement.

**_Count I:_** Plaintiff alleges the song "*The Man*," as well as its accompanying music video, used "an identical protectable expression (albeit switching out a few words for other similar ones) to come up with a strikingly similar" expression of a woman working in a male-dominated corporate system in Plaintiff's poem "*Ordinary Citizen*." [SAC ¶¶ 52-56]. Plaintiff alleges that "*Ordinary Citizen*" is about a "female working in a male-dominated office environment" and "reveals sequenced expressions" to create a "rigged-race" metaphor. [*Id.* ¶ 56]. Under the first prong of the substantial similarity test, this Court has already ruled that "ideas, metaphors, contexts, and themes" are not proper subjects for copyright protection. [Order at 6-7]; 17 U.S.C. § 501(a). Under the second prong, *there is not a single line of protected expression that is similar between the two works*. [*Compare* Ex. A at 1-2, *with* ECF 65-3 at 3]. The only similarity is that both works include the words "running" and "power." [*Id.*]. Use of the same single word does not amount to copyright infringement.[10] 37 C.F.R. § 202.1(a); [Order at 7-8].

**_Count II:_** Plaintiff alleges the songs "*Who's Afraid of Little Old Me?*," "*I Can Do It with a Broken Heart*," and the "*Fortnight*" music video infringe upon Plaintiff's poem "*Whirlwind*" because some of the works reference similar themes and words. Plaintiff alleges (incorrectly, as described below) that "*Who's Afraid of Little Old Me?*" contains the same phrase they/you "caged me and told me I'm crazy." [SAC ¶¶ 60, 63, 66-67]. Plaintiff also alleges that "*Who's Afraid of Little Old Me?*" and the "*Fortnight*" music video include themes and ideas of "a woman confined,

---

[10] In passing, Plaintiff suggests that Artist's lyrics in the song "Afterglow" support her claims because her poem "*Ordinary Citizen*" contains the word "*Afterglow*." [SAC ¶ 53]. However, single words are not copyrightable and cannot be infringed upon. 37 C.F.R. § 202.1(a).

silenced, and gaslighted" or institutionalized and both reference historical figures. [SAC ¶¶ 61-68]. As the Court has already ruled, "ideas, metaphors, contexts, and themes" are not copyrightable. [Order at 6-7]; *Sanitech Sys., Inc.*, 217 F. Supp. 2d at 1246. Similarly, under the first prong, a short phrase, on its own, is not afforded copyright protection and thus, cannot be infringed upon. 37 C.F.R. § 202.1(a); *Vallejo*, 833 F. App'x at 259 n.3; [Order at 7-8]. Under the second prong, Plaintiff misstates the song lyric (it is actually "You caged me and then you called me crazy"). The idea of a person being called crazy and put in a cage is not a protectable expression, and there are no other similarities between the works. [*Compare* Ex. A at 4-5, *with* ECF 65-3 at 5-6].[11]

Plaintiff further alleges that her poem and the song "*I Can Do It With a Broken Heart*" share the theme of "creative resilience" and "convey the idea of transforming adversity into art." [SAC ¶ 69]. These are plainly unprotected expressions as the Court has already ruled, "ideas, metaphors, contexts, and themes" are not copyrightable. [Order at 6-7]; *Sanitech Sys., Inc.*, 217 F. Supp. 2d at 1246. The only similarity is that both works include the words "art" and "heart." [SAC ¶ 69]. Use of the same single word does not amount to copyright infringement. 37 C.F.R. § 202.1(a); [Order at 7-8].

**_Count III:_** Plaintiff alleges the song "*My Tears Ricochet*" infringes on Plaintiff's poems "*Scorpion,*" "*Beams of Light,*" "*Gaslight,*" and "*Innocence Lost.*" Not so.

---

[11] Plaintiff alleges the "direct parallels" to a woman named Nellie Bly "demonstrates copying of protectable expressions." [SAC ¶¶ 61-65, 70]. She claims that Artist's music video for "*Fortnight*" included a "rare historical reference to Nellie Bly" when Artist was "dressed and acting in the likeness of Nellie Bly" at a typewriter in an asylum. [SAC ¶¶ 61, 64]. This is a completely unfounded assumption by Plaintiff, with no basis in fact. Regardless, a reference to a historical figure is not a protectable expression. *See Sanitech Sys., Inc.*, 217 F. Supp. 2d at 1246 (identifying noncopyrightable expressions as those from "common sources, the public domain," as well as "facts"). Notwithstanding this, Plaintiff ultimately states that she "does not claim infringement regarding her poetry about Nellie Bly." [SAC ¶ 162].

Plaintiff alleges "My Tears Ricochet" infringes on Plaintiff's poem "*Scorpion*" because it allegedly uses the same metaphors / themes of "tears as weapons or reflections," and "heaven vs. hell."[12] Under the first prong, the Court already held that "the theme of communicating with a loved one who has passed" is a "concept or theme [that] is not unique or original" and thus, cannot be infringed upon [*Marasco I*, ECF 20 at 9 (citing examples)], and critically this is not even the theme of "*My Tears Ricochet*." Nor are any of the other metaphors or themes copyrightable, [Order at 6-7], *Singleton*, 611 F. App'x at 672, *Beal*, 20 F.3d at 459-60, or even the applicable themes in "*My Tears Ricochet*." Under the second prong, when comparing the works, there are no similarities in any protected expression. [*Compare* Ex. A at 3, *with* ECF 65-3 at 7-12].

Plaintiff also alleges "*My Tears Ricochet*" infringes on Plaintiff's poem "*Beams of Light*" because (1) it uses imagery of "souls rising upward" and "communication with the deceased" and (2) the lyric "And I still talk to you (when I'm screaming at the sky)" is similar to "Doves dancing and singing high in the sky/and I can hear the beautiful choir." [SAC ¶¶ 76-78]. A comparison of these works shows that "*My Tears Ricochet*" does not include the same imagery or theme, or have any lyrical similarities. [*Compare* Ex. A at 3, *with* ECF 65-3 at 10]. Nor is a theme copyrightable in any event. *Singleton*, 611 F. App'x at 672; *Beal*, 20 F.3d at 459-60. Plaintiff further alleges that "*My Tears Ricochet*" includes the same theme of jewelry as an "omen to future loss" as in Plaintiff's poem "*Beams of Light*." [SAC ¶ 87]. However, a cursory review shows no such theme of future omens in the lyrics. [Ex. A at 3]. Under the first prong, broad themes and metaphors are not copyrightable and cannot be infringed upon. *Sanitech Sys., Inc.*, 217 F. Supp. 2d at 1246; *Herzog*, 193 F.3d at 1257. Under the second prong, Plaintiff alleges no other similarities.

---

[12] The relevant lyric that Plaintiff relies on "She's laughing up at us from Hell" [SAC ¶ 74] is not in "*My Tears Ricochet*." *See* Ex. A at 3.

Plaintiff also alleges "*My Tears Ricochet*" infringes on her poem "*Innocence Lost*" because it discusses lovers reflecting and causing pain through the metaphor of "tears reflecting back." [SAC ¶¶ 80-81]. But Plaintiff admits this assertion is based on "metaphors," which are not copyrightable. [SAC ¶ 81]; [Order at 6-7]; *Singleton*, 611 F. App'x at 672, *Beal*, 20 F.3d at 459-60. In addition, Plaintiff alleges that "*My Tears Ricochet*" parallels the "destructive water imagery" in Plaintiff's poem "*Gaslight*" which discusses being submerged under water. [SAC ¶¶ 82-83, 86]. However, describing the actual destructive capabilities of water (or fire) as a metaphor to a personal relationship is not a unique or copyrightable expression. *Sanitech Sys., Inc.*, 217 F. Supp. 2d at 1246; *see* Matt Kearney, *Fire & Rain*, City of Black and White (Columbia Records 2009). Plaintiff also alleges that "*My Tears Ricochet*" "echoed" Plaintiff's work "*Gaslight*" with the lyric "The touch of a hand lit the fuse" [SAC ¶ 84], but  neither this lyric nor any similar lyric is in "*My Tears Ricochet*." [Ex. A at 3]. Even so, describing an "explosive chain of events" is not a unique protected expression and, as it is a concept or idea, is insufficient to allege copyright infringement. [Order at 6-7]; *Singleton*, 611 F. App'x at 672; *Herzog*, 193 F.3d at 1257.

Under the second prong, when comparing the works, there are no similarities in any protected expression. [*Compare* Ex. A at 3, *with* ECF 65-3 at 7-12].[13]

**_Count IV:_** Plaintiff alleges the songs "*Hoax*" and "*Illicit Affairs*" infringe on her poem "*Sky Tinted Water*" because (1) "*Hoax's*" lyric "Your faithless love is the only hoax I believe in" concerns themes about betrayal and false love [SAC ¶¶ 94-95]; and (2) "*Illicit Affairs* " lyrics "you

---

[13] In passing, Plaintiff alleges that the lyric "To assess the equation of you" in the song "*Mastermind*" somehow furthers Plaintiff's claim here because "*Mastermind*" contains a framing of "people as equations" which Plaintiff also does "in a separate [unidentified] poem." [SAC ¶¶ 88-90]. The allegation does not help Plaintiff's claims in the slightest. Plaintiff has not unidentified her work at issue, and in any event, metaphors are not copyrightable and cannot be infringed upon. [Order at 6-7]; *Sanitech Sys., Inc.*, 217 F. Supp. 2d at 1246. This count, in particular, is a prime example that the SAC is an impermissible shotgun pleading. *See supra* Section I.A.

showed me colors you know I couldn't see with anyone else" (note, this lyric is actually "can't," not "couldn't") and "I made you my temple, my mural, my sky" (note, this lyric is not in "*Illicit Affairs*" [Ex. A at 10-11]) "closely mirror" "*Sky Tinted Water's*" line "[w]ill you show me how to complement the sky"—which Plaintiff characterizes as "an original metaphor equating love with the beauty and vastness of the sky"—and the line "Sky Tinted Water /Your love is crystal clear ... / Thought love would lead the way / Then I saw your reflection / And falsely led astray / I'm trying not to cry/ Will you show me, how to complement the sky." [SAC ¶¶ 92-97]. Under the first prong, Plaintiff alleges a "rephrase[]" of a concept, which is not copyrightable and thus cannot be infringed upon. *Sanitech Sys., Inc.*, 217 F. Supp. 2d at 1246; *Herzog*, 193 F.3d at 1257; [*Marasco I*, ECF 20 at 8-9]; *see also* [Order at 6-7 (noting "broad ideas," "metaphors contexts, and themes" are not copyrightable)]. Under the second prong, the referenced lyrics are not at all similar to Plaintiff's lines, and the single shared words "love" and "sky" do not amount to similarities of protected expression. [*Compare* Ex. A at 8-11, *with* ECF 65-3 at 13]; 37 C.F.R. § 202.1(a); [*Marasco I*, ECF 20 at 8-9].

**_Count V:_** Plaintiff alleges the songs "*Guilty as Sin?*" and "*Clara Bow*" infringe on Plaintiff's poem "*Devious Minds*" because (1) "*Guilty as Sin?*" purportedly uses "striking[ly] similar verbiage and tone" since the works explore "feelings of guilt and uncertainty," [SAC ¶¶ 102-06]; and (2) "*Clara Bow*" references a "known figure" (albeit a different figure than is referenced by Plaintiff) from the 20th century who was "painted in a negative light by the media" and in doing so, "paraphrased what the Plaintiff wrote." [SAC ¶¶ 108-10]. Regarding "*Guilty as Sin?*," under the first prong, Plaintiff alleges a "rephrase[]" of a concept, which is not copyrightable and cannot be infringed upon. *Sanitech Sys., Inc.*, 217 F. Supp. 2d at 1246; *Herzog*, 193 F.3d at 1257; [Order at 6-7]. Regarding "*Clara Bow*," under the first prong, themes—assuming these

works share the same themes (they do not)—are not protected expression and cannot be infringed upon. 17 U.S.C. § 102(b); *Herzog*, 193 F.3d at 1257; [Order at 6-7]; [*Marasco I,* ECF 20 at 8-9]; *see also* Elton John, *Candle In The Wind*, on Goodbye Yellow Brick Road (DJM 1973).  Under the second prong, the referenced lyrics are not at all similar to Plaintiff's lines. [SAC ¶¶ 107-109; *compare* Ex. A at 12-15, *with* ECF 65-3 at 14-15].

     **_Count VI:_** Plaintiff alleges the songs "*Clara Bow*," "*Down Bad*," and "*The Manuscript*" copy Plaintiff's poem "*Noah*." She alleges the song "*Clara Bow*" uses "apocalyptic imagery of flesh, flood, and divine deception" that is also contained in "*Noah*," and includes the phrase "flesh and blood." [SAC ¶¶ 111-13]. Regarding "*Down Bad*," Plaintiff alleges that the lyrics "Down bad, waking up in blood/ Staring at the sky, come back and pick me up" also use "biblical/apocalyptic imagery (blood, sky, escape) to portray devastation and the need for deliverance." [SAC ¶ 114]. A cursory review of "*Down Bad*" and "*Clara Bow*" reveals no such apocalyptic themes. [Ex. A at 14-17]. Regardless, under the first prong, themes, such as the apocalypse, are not copyrightable and cannot be infringed upon. 37 C.F.R. § 202.1(a); *Vallejo*, 833 F. App'x at 259 n.3; [Order at 6-7]; *Marasco I*, ECF 20 at 9 ("concept or theme [that] is not unique or original" cannot be infringed upon)]. Neither can short phrases or words. 37 C.F.R. § 202.1(a). Under the second prong, Plaintiff alleges no other similarities aside from the above unprotectable (and non-existent) instances.

     Plaintiff also alleges the lyric from the "*Manuscript*" "Tears fell in synchronicity with the score," "echoes" the same idea from "*Noah*," that "[w]e need to come together like musical notes to poetry." The lyric and line share little, if anything, in common, other than the idea of connection to music. [SAC ¶¶ 115-16]. Such common, broad ideas are not copyrightable and cannot be infringed. 17 U.S.C. § 501(a); *Betty, Inc. v. Pepsico, Inc.*, 848 F. App'x 43, 44-45 (2d Cir. 2021).

     **_Count VII:_** Plaintiff alleges the songs "*Right Where You Left Me*" and "*It's Time To Go*"

infringe upon Plaintiff's poem "*Stagnate*" because they share the phrase "it's time to go." [SAC ¶¶ 118-19]. Plaintiff also alleges the songs copy the metaphor of being left in a public setting as equating to "emotional abandonment." [SAC ¶ 120]. Under the first prong, concepts and short phrases are not protected expression and cannot be infringed upon. 17 U.S.C. § 102(b); 37 C.F.R. § 202.1(a); *Herzog*, 193 F.3d at 1257; [Order at 6-7]. Further, common metaphors of being left in a public setting are not copyrightable. [Order at 7-8]; [*Marasco I*, ECF 20 at 8-9 ("ubiquitous metaphor, found in numerous poems, songs, and other forms of expression" is "insufficient" to plead copyright infringement)]. Under the second prong, the lyrics "I'm still at the restaurant, right where you left me" and "it's time to go" (from two different songs) are not at all similar, let alone substantially or strikingly similar to Plaintiff's lines "It's time to go/ when will you let me go?/ I continue to drive forward, but you won't let me go" and "I waited at the bar/ Didn't know by then you were gone too far." [SAC ¶ 118; *compare* Ex. A at 26-29, *with* ECF 65-3 at 18-19].

Plaintiff also alleges that the song "*Clara Bow*" infringes upon Plaintiff's poem "*Stagnate*" because both works contain a "theme" of someone "being perceived not for who she truly is, but as an image constructed by another." [SAC ¶¶ 121-22]. Plaintiff provides the additional conclusory statement that "[t]his is not a generic theme" because it equates waiting in public with being stranded emotionally. However, even if applicable to "*Clara Bow*" (they are not), these again are simply ideas, concepts, themes, metaphors, and common scenes that are not copyrightable. [Order at 6-7]; *Sanitech Sys., Inc.*, 217 F. Supp. 2d at 1246.

**<u>Count VIII:</u>** Plaintiff alleges the songs "*Midnight Rain*" and "*Long Story Short*" infringe Plaintiff's poem "*Delusional Reality*" because they use the metaphor where the "narrator becomes the storm itself." [SAC ¶¶ 124-28]. This metaphor appears in the "*Delusional Reality*" lines "Drowning in my storm, waves crash the shore" and "With the clouds I rain, the smog consumes

me" [SAC ¶ 124]. Under the first prong, the Court has previously ruled that alleging unlawful copying of a "ubiquitous metaphor, found in numerous poems, songs, and other forms of expression" is "insufficient" to plead copyright infringement. [*Marasco I*, ECF 20 at 8-9]; [Order at 6-7; *see* Brad Paisley, *Perfect Storm*, on Moonshine in the Trunk (Arista Nashville 2014); *see also Sanitech Sys., Inc.*, 217 F. Supp. 2d at 1246; *Herzog*, 193 F.3d at 1257. Under the second prong, Plaintiff alleges that the lyric from "*Long Story Short*" "my waves meet your shore" is "directly echoed" in *Delusional Reality*'s "waves crash the shore." [SAC ¶ 127]. Such short words or phrases, especially those simply describing what waves naturally do, are not copyrightable and cannot be infringed upon. 37 C.F.R. § 202.1(a); [Order at 7-8]. There are no other even remotely similar lines between the works. [*Compare* Ex. A at 19-20, 32-33, *with* ECF 65-3 at 20].

**_Count IX:_** Plaintiff alleges the song "*Robin*"[14] infringes on Plaintiff's poems "*Innocence Lost*" and "*Ingenue*" because these works contain the "parallel[] [] theme" of "the harshness awaiting a child" by depicting a "young girl whose innocence and imagination are juxtaposed with the adult recognition that she will face a cruel world but will learn resilience" and including the metaphor of a child turning into an animal. [SAC ¶¶ 131-34]. Under the first prong, the Court previously ruled that alleging unlawful copying of a "ubiquitous metaphor, found in numerous poems, songs, and other forms of expression" is "insufficient" to plead copyright infringement. [*Marasco I*, ECF 20 at 8-9]; [Order at 6-7]; *see* Katy Perry, *Roar*, on Prism (Capitol 2013). Under the second prong, Artist's lyrics are objectively not at all similar to Plaintiff's lines. [SAC ¶¶ 131-33]. When comparing the works, there is not a single similar line. [*Compare* Ex. A at 21, *with* ECF 65-3 at 8-9, 21-23].

---

[14] In passing, Plaintiff suggests that the song *Nothing New* includes the word "'ingenue,' further mirroring" Plaintiff's use of a "term as a title and theme." [SAC ¶ 135]. But, again, single words and themes are not copyrightable. 37 C.F.R. § 202.1(a); *Beal*, 20 F.3d at 459-60.

**_Count X:_** Plaintiff alleges the song "*The Great War*" "rel[ied] on the uncommon metaphor of desire as fuel and fire as both weapon and consequence in a conflict between lovers" as in Plaintiff's poem "*The Fire*." [SAC ¶ 139]. Under the first prong, a metaphor of fire igniting one's passion or desire is not a unique protected expression and is insufficient to allege copyright infringement. *See* [Order at 6-7]; [*Marasco I*, ECF 20 at 8-9]; Sean Kingston, *Fire Burning*, on Tomorrow (Epic 2009); 17 U.S.C. § 102(b). Under the second prong, Artist's lyrics "[d]iesel is desire, you were playing with fire" in "*The Great War*" (mixed in with two other misquoted and/or misattributed lyrics from works not included in this action, quoted as "Pick your battles until the battles pick you" and "now I breathe the fire each time we talk") are not at all similar to Plaintiff's line "[a]nger fuels our desire … I'm fighting fire with fire … pick your battles wisely, they say." [SAC ¶¶ 137-38]. The only similarity is that both works use the words "fire" and "desire." [*Compare* Ex. A at 24-25, *with* ECF 65-3 at 24-25]. Again, alleged copying of single words does not constitute copyright infringement. 37 C.F.R. § 202.1(a).

**_Count XI:_** Plaintiff alleges the song "*Invisible String*" infringes on the poem "*Invisible Matter*" because they both "describ[e] an unseen force that invisibly ties two people together, bringing both hardship and salvation." [SAC ¶ 143]. Plaintiff also alleges "*Invisible String*" infringes on the poem "*Time*" because both works "personify time as [] mysterious" and the song "rearticulates Plaintiff's original expression with only minor word substitutions." [SAC ¶ 146]. Under the first prong, metaphors and themes are not protected expression and cannot be infringed upon. 17 U.S.C. § 102(b); *Herzog*, 193 F.3d at 1257. The claim also fails because it is simply untrue (by any reasonable standard) that these works share the same message or have similar lines. [*Compare* Ex. A at 22-23, *with* ECF 65-3 at 25-26]. Under the second prong, the single words "invisible" and "time" are not protected under copyright law. *Sanitech Sys., Inc.*, 217 F. Supp. 2d

at 1246; 37 C.F.R. § 202.1(a); [Order at 7-8].[15]

**_Count XII:_** Plaintiff alleges the Instagram caption[16] introducing Artist's album *The Tortured Poets Department* infringes on Plaintiff's introduction to her poetry book *Fallen* by using "striking[ly] similar" "phrasing" and claims Artist "repackaged it with minor variations." [SAC ¶¶ 151-54]. This is simply not true and, like the above claims, ridiculous. A cursory comparison shows there are no similarities in the text of the two excerpts, and no reasonable actor would disagree. [*Compare* link in footnote 16, *with* ECF 65-3 at 27]. Further, introductions commonly explain the purpose and inspiration of the work, and there are limited ways to present those sentiments. Thus, any alleged similarities (there are none) are not protectible because "standard expressions that naturally follow from the idea for a work of authorship" are not copyrightable. U.S. Copyright Office, *Compendium of U.S. Copyright Off. Practices* § 313.3(B) (3d ed. 2021).

\* \* \*

Finally, the SAC includes conclusory statements that the allegedly infringing songs are "strikingly similar" to Plaintiff's poems. [*E.g.* SAC ¶¶ 15, 33, 54, 68, 104, 153, 182]. But Plaintiff's own allegations contradict this assertion: she admits that the compared works are not nearly identical (as required for striking similarity) and that discrepancies exist, describing the alleged copying as a "rephrase[]"; "paraphrase[]"; or "changing a few" words around. [SAC ¶¶ 80, 98, 110, 147]; *see Davis*, 2012 WL 12868729, at \*4 (slight alterations or minor changes between the works fails to adequately allege striking similarity). *Cf. Olem Shoe Corp. v. Washington Shoe Corp.*, 591 F. App'x 873, 885 (11th Cir. 2015) (two works are "strikingly similar" only where

---

[15] Plaintiff also alleges that the song "*Invisible String*" infringes on Plaintiff's poem "*Ingenue*" because both describe "leaves" turning "gold." [SAC ¶¶ 148-49]. However, describing a commonly observed change in nature and using the same two words is not a unique or protectable expression. [Order at 6-8]; 37 C.F.R. § 202.1(a).

[16] Available at: https://www.instagram.com/p/C57c1DWMkf_/?img_index=1.

"virtually identical"). In comparing the works, no trier of fact could rationally determine they are strikingly similar. [*Compare* Ex. A, *with* SAC, 65-3]. Dismissal is thus required.

### D.  Plaintiff Does Not Allege a Cognizable Claim of "Pattern" Infringement.

Acknowledging that many of her counts "involve shorter phrases that are not protectable" [SAC ¶ 177], Plaintiff attempts to save her claims by asserting a "pattern" of copyright infringement.  [SAC ¶¶ 176-80].  In so doing, Plaintiff completely miscomprehends what is required to show a "pattern" (more often referred to as a "combination" theory) of copyright infringement and continues to fail to state a claim.

As a threshold matter, while some circuits have recognized the possibility of a pattern claim based on the unique combination of otherwise unprotectable elements within a work, the Eleventh Circuit has not expressly adopted it. *Wooten v. Netflix, Inc.*, 2021 WL 4864744, at *7 (N.D. Ga. May 25, 2021) (dismissing copyright combination claim with prejudice, noting "the Eleventh Circuit has not adopted such an approach"). Indeed, Plaintiff's only support for a "pattern" theory is a since-overruled Ninth Circuit case. [SAC ¶ 177 (quoting *Three Boys Music Corp. v. Bolton*, 212 F.3d 477 (9th Cir. 2000), *overruled by Skidmore v. Led Zeppelin*, 952 F.3d 1051, 1066 (9th Cir. 2020))].

Notwithstanding whether the Eleventh Circuit even recognizes this theory, Plaintiff's allegations could not support a pattern claim here. Specifically, Plaintiff attempts to pick out admittedly unprotected elements such as "short phrases" from several different works and combine them to create a supportable copyright claim.[17] However, for a pattern claim, the unprotected

---

[17] Plaintiff also includes generic references to a quill pen, corded phones, a photo of a lake, and an allegedly similar pose in a dance routine as support for this ill-conceived pattern theory. [SAC ¶¶ 178-180]. However, Plaintiff has failed to include basic information or allegations as to any copyright protection over these images, concepts, or choreography. Indeed, the only copyrights that Plaintiff has identified in the SAC are limited to the text of her works. [*See* ECF 65-1].

elements must also be set out in a *novel* arrangement and within a *single* work. *Skidmore*, 952 F.3d at 1075-76; *Wooten*, 2021 WL 4864744, at \*7. Plaintiff's pattern allegations do not identify *any* novel arrangement of multiple unprotected elements within a single work and therefore fail.

**E. Plaintiff Fails to Plead Contributory or Vicarious Infringement.**

In two bullet points in a single paragraph, Plaintiff purports to also allege contributory and vicarious copyright infringement by UMGI and Republic, stating they "knowingly induced, caused, and materially contributed to [Artist's] infringement" and "had the right and ability to supervise the infringing activity and derived a direct financial benefit from" it. [SAC ¶ 184]. These are bare legal conclusions that the Court need not accept on a motion to dismiss. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009) ("a formulaic recitation of the elements of a cause of action will not do."). Moreover, contributory and vicarious infringement require (1) a finding of direct infringement and (2) a finding the defendant "was in a position of control" and "with knowledge of the infringing activity, induces, causes or materially contributes to the infringing conduct of another" (contributory) or "ha[s] the right and ability to supervise the infringing activity and must have a direct financial interest" (vicarious). *Cable/Home Commc'n Corp. v. Network Prods., Inc.*, 902 F.2d 829, 845 (11th Cir. 1990); *Coach, Inc. v. Swap Shop, Inc.*, 916 F. Supp. 2d 1271, 1282 (S.D. Fla. 2012). Here, the threshold requirement for direct infringement has not been met, *see supra* Sections I.B-I.D, nor has Plaintiff pled any non-conclusory facts to support a finding of control, knowledge, supervision, or any financial interest of UMGI or Republic over the allegedly infringing activities. The SAC also fails to state a claim for contributory or vicarious infringement.

**II.   PLAINTIFF FAILS TO ALLEGE FACTS FOR THIS COURT TO EXERCISE PERSONAL JURISDICTION OVER UMGI.**

Plaintiff has failed to satisfy her burden setting forth a prima facie case of personal jurisdiction over UMGI. Where, as here, "satisfaction of the Florida long arm statute is not

discussed, and Plaintiff fails to plead any facts to even remotely support a finding of personal jurisdiction," the burden does not shift to Defendants to disprove personal jurisdiction, and the complaint should be dismissed. *Borislow v. Canaccord Genuity Grp.*, 2014 WL 12580259, at *5 (S.D. Fla. June 27, 2014); *Ivanovic v. Overseas Mgmt. Co.*, 2011 WL 5508824, at *2-3 (S.D. Fla. Nov. 9, 2011). What's more, even if Plaintiff's vague and conclusory personal jurisdiction allegations could satisfy her prima facie burden (they do not), a sworn statement from UMGI officer Sheryl Gold establishes definitively that UMGI lacks sufficient contacts with this forum.

### A. Plaintiff Does Not Allege that UMGI is Subject to General Jurisdiction in Florida.

General jurisdiction exists over a defendant corporation in a forum in which the corporation is "fairly regarded as at home," which is almost always the place of incorporation and principal place of business. *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011). Here, the SAC recognizes that UMGI is headquartered in California, and it contains no allegations as to UMGI's place of incorporation. [SAC ¶ 7]. UMGI is incorporated in Delaware.[18] As such, UMGI is not at home and not subject to general jurisdiction in Florida. *See Emrit v. Universal Music Grp.*, 2020 WL 4751446, at *4-5 (M.D. Fla. Aug. 17, 2020), *aff'd*, 833 F. App'x 333 (11th Cir. 2021) (granting Universal Music Group's motion to dismiss *pro se* plaintiff copyright claims, for lack of personal jurisdiction, finding no general jurisdiction existed in Florida).

### B. Plaintiff Has Failed to Satisfy Her Burden to Allege that UMGI is Subject to Specific Jurisdiction in Florida.

Where, as here, general jurisdiction does not exist, Plaintiff must establish specific jurisdiction to avoid dismissal. Plaintiff falls well short of her burden because the jurisdictional

---

[18]    *Department of State: Division of Corporations*, Entity Details, https://icis.corp.delaware.gov/ecorp/entitysearch/NameSearch.aspx. The Court may take judicial notice of relevant public documents when reviewing a motion to dismiss. *Ellison v. Postmaster Gen., USPS*, 2022 WL 4726121, at *6-7 (11th Cir. Oct. 3, 2022).

allegations in the SAC are vague, pleaded in shotgun style, and legally and factually deficient.

Under Florida's long-arm statute, "a court may exercise specific personal jurisdiction over a non-resident defendant who engaged in one of the enumerated acts listed under Florida Statute section 48.193(1)(a)." *Miller v. Gizmodo Media Grp.*, 383 F. Supp. 3d 1365, 1371 (S.D. Fla. 2019). The SAC contains the following allegations of UMGI's purported actions related to the forum:

- "Defendants promote and produce events in this District, including concerts, the sale of records, CDs, and merchandise, and the nationwide distribution and exhibition of the *Eras Tour* film, generating millions of dollars in local revenue." [SAC ¶ 3].

- "Defendant Universal Music Group, Inc., is a musical recording group with operational headquarters in California and is and was doing business in the State of Florida and in this judicial district and distributes the songs listed in this complaint." [SAC ¶ 7].

First, shotgun, vague, and indiscriminate allegations that all Defendants "promote and produce events in this District" are insufficient to plead a prima facie case of personal jurisdiction against UMGI. *See, e.g.*, *Johnston v. Anti-Defamation League*, 2025 WL 2029744, at *6-7 (M.D. Fla. July 21, 2025) (dismissing claims for lack of personal jurisdiction where jurisdictional allegations were pled indiscriminately). Second, Plaintiff's allegations that UMGI "was doing business in the State of Florida" and "distributes the songs listed" are legal conclusions which the Court is not bound to accept. *Twombly*, 550 U.S. at 555 (courts "are not bound to accept as true a legal conclusion couched as a factual allegation"); *Oviedo v. Ramirez*, 2022 WL 1641865, at *3 (S.D. Fla. May 24, 2022) (finding deficient the allegation that "[t]his Court has personal jurisdiction over the Defendants, because they have, *inter alia*, conducted business in the Southern District of Florida, and because they are liable for copyright infringement . . . which has been committed within this District."). Plaintiff fails to provide the facts necessary to satisfy her prima facie burden under the long arm bases or that Defendants purposefully targeted Florida. *Id.*

Second, the allegations that UMGI does business in Florida by distributing songs or promoting events do not establish that UMGI is "conducting" or "carrying on a business" for the purposes of Florida Statute Section 48.193(a)(a)(1) or that Plaintiff's claim arose from those activities. For example, in *Carey v. Kirk*, this court found that it lacked personal jurisdiction over UMGI in Florida based on its relationship with a purportedly affiliated artist, which allegedly involved revenue sharing and branding of the artist's events and ownership rights to the artist's songs. 2022 WL 4594124, at *4 (S.D. Fla. Aug. 4, 2022), *aff'd*, 2024 WL 3200475 (11th Cir. June 27, 2024). There, plaintiffs failed to satisfy their burden to establish a "general course of business activity *in the state*," through evidence of operations in Florida, Florida clients served, or revenue percentages from Florida clients. *Id.* at *3-4; *see also Quesada v. Better Earth, Inc.*, 2024 WL 3890077, at *4 (M.D. Fla. Aug. 21, 2024) (finding allegations that defendant sold goods in Florida and maintained interactive website promoting Florida operations insufficient to satisfy business conduct under Section 48.193); *Oviedo*, 2022 WL 1641865, at *3 (noting even if plaintiff had sufficiently alleged business in Florida, plaintiff did not establish copyright claim arose from the business transactions). Likewise, here UMGI has not directed any business conduct to Florida from which Plaintiff's claims arose.

If there was any doubt as to the insufficiency of Plaintiff's jurisdictional allegations, the attached sworn declaration explains that UMGI does not conduct business in Florida or have any other relevant contacts with the state. **Exhibit B**, Declaration of Sheryl Gold ("Decl."). UMGI does not conduct business in Florida and is not registered to transact business in Florida. Decl. ¶ 6. UMGI *does not* operate or control an office in Florida; hold any real property or maintain financial accounts in Florida; does not regularly do or solicit business in or derive substantial revenue from goods or services rendered in Florida; and does not maintain a phone, mailing

address, or agent for service of process in Florida. Decl. ¶¶ 7-11. UMGI is simply a holding company with no day-to-day operations or employees. Decl. ¶ 4. Since UMGI has no day-to-day operations or employees, it could not have (and did not) "promote and produce events in this District," participate in the "nationwide distribution and exhibition of the *Eras Tour* film," or "induce[]" any purported infringement. Decl. ¶¶ 15, 17; [SAC ¶¶ 3, 184]. Further, UMGI does not contract with any recording artist, including Artist, has never authorized any recording artist, including Artist, to act as UMGI's agent, and UMGI has never portrayed a recording artist as one of its agents. Decl. ¶¶ 12-13. Lastly, UMGI does not own any rights to songs or music performed by recording artists, including Artist. Decl. ¶ 14. UMGI does not satisfy any of the long arm bases under Florida law.

Even if the SAC allegations satisfied Florida's long-arm statute (they do not), exercise of personal jurisdiction over UMGI would still violate Due Process. For a court to exercise specific personal jurisdiction over a defendant without offending due process, the following three factors are evaluated:

> (1) whether the plaintiff's claims arise out of or relate to at least one of the defendant's contacts with the forum; (2) whether the nonresident defendant purposefully availed himself of the privilege of conducting activities within the forum state, thus invoking the benefit of the forum state's laws; and (3) whether the exercise of personal jurisdiction comports with traditional notions of fair play and substantial justice.

*Mosseri*, 736 F.3d at 1355. Plaintiff "bears the burden of establishing the first two prongs, and if the plaintiff does so, a defendant must make a 'compelling case' that the exercise of jurisdiction would violate traditional notions of fair play and substantial justice." *Id.* Plaintiff has failed to satisfy her burden of establishing the first two prongs because, again, the SAC lacks any well-pleaded facts that her claim arose out of or relates to UMGI's contacts with the forum (which there are none) or that UMGI purposefully availed itself of the privilege of conducting activities within

28

the forum state. As recognized by another court in this District, under these circumstances, any exercise over UMGI would violate Due Process:

> Here, Plaintiffs fail to establish at least one prong. Plaintiffs have not demonstrated that UMGI purposefully availed itself of the privilege of conducting activities within Florida. As established above, Plaintiffs have failed to provide any evidence of UMGI's purported activities in Florida, thus it cannot be said that UMGI availed itself of the privilege of conducting activities within Florida. Exercising specific personal jurisdiction would therefore violate due process.

*Carey*, 2022 WL 4594124, at *3-4.

Plaintiff's claims against UMGI must also be dismissed for lack of personal jurisdiction.

## III. PLAINTIFF SHOULD BE COLLATERALLY ESTOPPED[19] FROM RELITIGATING HER BASELESS COPYRIGHT CLAIMS IN THIS CASE.

While Plaintiff's SAC should be dismissed in total for the reasons described above, at a minimum Plaintiff should be collaterally estopped from relitigating claims based upon works that were dismissed with prejudice in *Marasco I*.

Collateral estoppel conserves scarce judicial resources and advances judicial efficiency and consistency by foreclosing litigation of legal or factual issues previously adjudicated by another federal judge. *In re Raiford*, 695 F.2d 521, 523-24 (11th Cir. 1983). "[C]ollateral estoppel is proper on a motion to dismiss where the existence of collateral estoppel can be judged from the face of the complaint." *In re Gosman*, 382 B.R. 826, 837, 839 (S.D. Fla. 2007). "Defensive use of collateral estoppel precludes a plaintiff from relitigating identical issues by merely 'switching adversaries.'" *Parkland Hosiery Co. v. Shore*, 439 U.S. 322, 329 (1979); *CSX Transp., Inc. v. Bhd. of Maint. of Way Emps.*, 327 F.3d 1309, 1317 (11th Cir. 2003).

---

[19] This Court's Order [*Marasco I*, ECF 79] provides that it "should not be construed as a final determination of any of Plaintiff's claims in Case No. 25-14067; nor should it be deemed to have preclusive effect in that action." *Id.* at 12. Defendants understand this language to refer to the well-established principle that application of a collateral estoppel defense is within the court's discretion and requires an opportunity for the non-moving party to defend against its application in the pending action. *E.g.*, *Collins v. Seaboard C. R. Co.*, 681 F.2d 1333, 1336 (11th Cir. 1982).

The application of collateral estoppel here readily satisfies the Eleventh Circuit's requirements. As in *Marasco I,* the SAC alleges that Defendants infringed the same purported works.[20] [*Compare Marasco I*, ECF 42, *with* ECF 65]. For ease of reference, Defendants have attached a chart comparing the at-issue works in *Marasco I* and this Action. *See* **Exhibit C**. The Court previously found that Plaintiff had not plausibly alleged her poems are protected expressions—instead, the poems "amount at most to ideas, metaphors, contexts, and themes" or share only single words or short phrases. [Order at 6-8]. In addition, the Court previously found Plaintiff failed to allege access or substantial similarity. [Order at 8-11]. There can be no dispute that the issues were actually litigated in *Marasco I*. After multiple amendments to her complaint [*Marasco I*, ECFs 1-1, 26, 42] and extensive briefing on issues raised in various iterations of motions to dismiss, [*see, e.g.*, *Marasco I*, ECFs 68-70], Plaintiff lost on each of her claims, which were ultimately dismissed with prejudice. [Order at 11-12]. The Court should apply collateral estoppel to bar these redundant, baseless, and harassing claims.

## CONCLUSION

For the foregoing reasons, Plaintiff's shotgun Second Amended Complaint for copyright infringement should be dismissed with prejudice, as it was in *Marasco I*. Defendants respectfully request that this Court enter an Order dismissing the Second Amended Complaint with prejudice.

---

[20] There are three counts in the SAC that have added a new allegedly infringing song: Count II (adding "*I Can Do It With a Broken Heart*"); Count III (adding "*Mastermind*"); and Count VI (adding "*The Manuscript*"). There is also one count that alleges a new allegedly infringed upon poem: Count XI (adding "Ingenue" to "*Invisible String*" allegations). Defendants do not seek the application of collateral estoppel as to these new allegations.

## <u>CERTIFICATE OF GOOD FAITH CONFERENCE</u>

Pursuant to Local Rule 7.1(a)(2), Counsel for Defendants has conferred with Plaintiff regarding their intent to move to dismiss the SAC based on Plaintiff's failure to allege personal jurisdiction as to UMGI in a good faith effort to resolve the issues raised in the motion and has been unable to do so.

DATED: December 4, 2025                    Respectfully Submitted,

By: <u>*/s/ James Douglas Baldridge*</u>
James Douglas Baldridge
(Florida Bar No. 708070)
Katherine Wright Morrone
(admitted *pro hac vice*)
600 Massachusetts Ave, NW
Washington, D.C. 20001
Tel: (202) 344-4000
Fax: (202) 344-8300
jbaldridge@venable.com
kwmorrone@venable.com

*Attorneys for Defendants Universal*
*Music Group, Inc., Republic Records,*
*and Taylor Swift*

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on December 4, 2025, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.

*/s/ James Douglas Baldridge*
James Douglas Baldridge